723 S.E.2d 242

**Shannon RANUCCI, Appellant,**

v.

**Corey K. CRAIN, Respondent.**

No. 4935.

Court of Appeals of South Carolina.

Heard Dec. 7, 2011.
Decided Jan. 25, 2012.
Rehearing Denied March 15, 2012.

Eric Christopher Davis and Michael E. Atwater, both of Rock Hill, for Appellant.

Lee Cannon Weatherly, of Charleston, for Respondent.

CURETON, A.J.

Three years after suffering a collapsed lung following a medical procedure, Shannon Ranucci filed a Notice of Intent to File Suit (Notice) against Corey K. Crain, M.D. Ranucci subsequently filed an affidavit of a medical expert. The circuit court granted Dr. Crain's motion to dismiss Ranucci's Notice for failure to file the medical expert's affidavit timely. Ranucci appeals, arguing the circuit court erred in finding the affidavit of her medical expert was not timely filed and in reading sections 15–79–125 and 15–36–100 of the South Carolina Code independently of each other. We affirm.

## FACTS

On June 7, 2006, Dr. Crain performed a needle biopsy of Ranucci's breast. Afterward, Ranucci suffered severe respiratory pain. On June 10, 2006, an x-ray revealed Ranucci had suffered a collapsed lung.

On June 8, 2009, Ranucci filed the Notice with the circuit court, describing the preceding events and naming Dr. Crain

as a defendant. The Notice stated "time constraints" prevented Ranucci from contemporaneously filing an affidavit of a medical expert. Furthermore, the Notice stated either she would file such an affidavit within the next forty-five days or her allegations of negligence would be "within the ambit of common knowledge and experience" so that Dr. Crain's conduct could be evaluated without the assistance of special learning.

Along with the Notice, Ranucci filed her Responses to Standard Interrogatories (Responses), which indicated she claimed partial and total temporary disability, loss of enjoyment of life, and medical and surgical expenses in addition to a collapsed lung. Ranucci identified Richard L. Boortz–Marx, M.D., and her treating physicians as expert witnesses she intended to call at trial.

In response, Dr. Crain filed an Answer to Notice of Intent to File Suit and a Motion to Dismiss. Dr. Crain moved for dismissal based upon Ranucci's failure to file an expert witness's affidavit contemporaneously with her Notice. He further contended the statute of limitations procedurally barred Ranucci from filing an action against him for her injuries because her expert witness's affidavit was defective.

On July 23, 2009, Ranucci filed an affidavit of Dr. Boortz–Marx (Affidavit), indicating Dr. Boortz–Marx practiced medicine in the areas of Anesthesiology and Anesthesiology Pain Management. Dr. Boortz–Marx averred Dr. Crain had violated the applicable standard of care by failing to document Ranucci's informed consent. Subsequently, Dr. Crain filed a supplemental memorandum pointing out Ranucci had not explained the "time constraints" that prevented her from timely filing an expert's affidavit [1] and adding to his grounds for dismissal the various deficiencies in the filing and substance of the Affidavit.

On August 13, 2009, the circuit court heard arguments on Dr. Crain's motion. The parties extensively argued both procedure and substance. In an order dated September 21,

---

1. In his supplemental memorandum and at the hearing on his motion, Dr. Crain pointed out Ranucci retained counsel in this matter prior to August 9, 2006, when her counsel requested her medical records from Dr. Crain.

2009, the circuit court found Ranucci failed to file the Affidavit timely as required by section 15–79–125 and granted Dr. Crain's motion to dismiss the Notice. However, because the Notice and Affidavit did not constitute an "action," the circuit court denied Dr. Crain's motion to dismiss based upon the applicable statute of limitations.

On October 5, 2009, Ranucci filed a motion to alter or amend the judgment seeking clarification of the circuit court's interpretation of sections 15–36–100 and 15–79–125. The circuit court denied the motion but stated the two statutes "operate independently of each other, and . . . [section] 15–36–100 does not offer a procedural alternative to [section] 15–79–125." This appeal followed.

## STANDARD OF REVIEW

An issue regarding statutory interpretation is a question of law. *S.C. Coastal Conservation League v. S.C. Dep't of Health & Envtl. Control*, 390 S.C. 418, 425, 702 S.E.2d 246, 250 (2010). "When reviewing an action at law, on appeal of a case tried without a jury, the appellate court's jurisdiction is limited to correction of errors of law." *Epworth Children's Home v. Beasley*, 365 S.C. 157, 164, 616 S.E.2d 710, 714 (2005).

## LAW/ANALYSIS

Ranucci asserts the circuit court erred in finding the Affidavit was not timely filed and in reading sections 15–79–125 and 15–36–100 of the South Carolina Code independently of one another. We disagree.

### A. Statutory Interpretation

"The cardinal rule of statutory interpretation is to determine the intent of the legislature." *Bass v. Isochem*, 365 S.C. 454, 469, 617 S.E.2d 369, 377 (Ct.App.2005); *see also Gordon v. Phillips Utils., Inc.*, 362 S.C. 403, 406, 608 S.E.2d 425, 427 (2005) ("The primary purpose in construing a statute is to ascertain legislative intent."). "All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *McClanahan v. Richland Cnty.*

*Council,* 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002). Courts should ascertain the legislature's intent "primarily from the plain language of the statute." *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 339, 478 S.E.2d 74, 77 (Ct.App.1996). We must read the language "in a sense that harmonizes with its subject matter and accords with its general purpose." *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992).

Terms that are clear and unambiguous on their face leave no room for statutory construction, and we must apply the statute according to its literal meaning. *Miller v. Aiken,* 364 S.C. 303, 307, 613 S.E.2d 364, 366 (2005); *see also City of Camden v. Brassell,* 326 S.C. 556, 561, 486 S.E.2d 492, 495 (Ct.App.1997) ("Where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it which are not in the legislature's language."). "An appellate court cannot construe a statute without regard to its plain meaning and may not resort to a forced interpretation in an attempt to expand or limit the scope of a statute." *Brown v. S.C. Dep't of Health & Envtl. Control,* 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002). However, when two statutes conflict, a specific statute prevails over a more general statute. *Spectre, LLC v. S.C. Dep't of Health & Envtl. Control,* 386 S.C. 357, 372, 688 S.E.2d 844, 852 (2010).

### B. Professional Negligence and Medical Malpractice Filings

Section 15–79–125(A) of the South Carolina Code (Supp. 2010) imposes prelitigation filing requirements upon individuals intending to file suit for medical malpractice:

Prior to filing or initiating a civil action alleging injury or death as a result of medical malpractice, the plaintiff shall contemporaneously file a Notice of Intent to File Suit and an affidavit of an expert witness, subject to the affidavit requirements established in Section 15–36–100, in a county in which venue would be proper for filing or initiating the civil action. The notice must name all adverse parties as defendants, must contain a short and plain statement of the facts showing that the party filing the notice is entitled to relief, must be signed by the plaintiff or by his attorney, and must include any standard interrogatories or similar disclo-

sures required by the South Carolina Rules of Civil Procedure. Filing the Notice of Intent to File Suit tolls all applicable statutes of limitations. The Notice of Intent to File Suit must be served upon all named defendants in accordance with the service rules for a summons and complaint outlined in the South Carolina Rules of Civil Procedure.

The remainder of this statute permits the parties to engage in limited prelitigation discovery, establishes a timetable for mandatory prelitigation mediation, and, in the event mediation fails, provides for the commencement of a lawsuit via the timely filing of a summons and complaint. S.C.Code Ann. § 15–79–125(B)–(F) (Supp.2010).

Section 15–36–100 of the South Carolina Code (Supp.2010) establishes requirements for filing complaints in actions for damages based upon professional negligence. Specifically, subsection B requires:

> Except as provided in Section 15–79–125, in an action for damages alleging professional negligence against a professional licensed by or registered with the State of South Carolina and listed in subsection (G) . . ., the plaintiff must file as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit.

*Id.* Subsection A identifies who may qualify as an expert witness for purposes of fulfilling the affidavit requirement and provides, in the case of an affidavit filed pursuant to subsection B, the defendant may "challenge the sufficiency of the expert's credentials pursuant to subsection (E)." *Id.* However, section 15–36–100(D) clarifies that it is not intended to "extend an applicable period of limitation, except that, if the affidavit is filed within the period specified in this section, the filing of the affidavit after the expiration of the statute of limitations is considered timely and provides no basis for a statute of limitations defense."

Subsections C, E, and F detail additional rules pertaining to filing and challenging affidavits filed pursuant to subsection B:

(C)(1) The contemporaneous filing requirement of subsection (B) does not apply to any case in which the period of limitation will expire, or there is a good faith basis to believe it will expire on a claim stated in the complaint, within ten days of the date of filing and, because of the time constraints, the plaintiff alleges that an affidavit of an expert could not be prepared. In such a case, the plaintiff has forty-five days after the filing of the complaint to supplement the pleadings with the affidavit. Upon motion, the trial court, after hearing and for good cause, may extend the time as the court determines justice requires. If an affidavit is not filed within the period specified in this subsection or as extended by the trial court and the defendant against whom an affidavit should have been filed alleges, by motion to dismiss filed contemporaneously with its initial responsive pleading that the plaintiff has failed to file the requisite affidavit, the complaint is subject to dismissal for failure to state a claim. The filing of a motion to dismiss pursuant to this section, shall alter the period for filing an answer to the complaint in accordance with Rule 12(a), South Carolina Rules of Civil Procedure.

(2) The contemporaneous filing requirement of subsection (B) is not required to support a pleaded specification of negligence involving subject matter that lies within the ambit of common knowledge and experience, so that no special learning is needed to evaluate the conduct of the defendant.

. . . .

(E) If a plaintiff files an affidavit which is allegedly defective, and the defendant to whom it pertains alleges, with specificity, by motion to dismiss filed contemporaneously with its initial responsive pleading, that the affidavit is defective, the plaintiff's complaint is subject to dismissal for failure to state a claim, except that the plaintiff may cure the alleged defect by amendment within thirty days of service of the motion alleging that the affidavit is defective. The trial court may, in the exercise of its discretion, extend the time for filing an amendment or response to the motion, or both, as the trial court determines justice requires. The filing of a motion to dismiss pursuant to this section shall alter the period for filing an answer to the complaint in

accordance with Rule 12(a), South Carolina Rules of Civil Procedure.

(F) If a plaintiff fails to file an affidavit as required by this section, and the defendant raises the failure to file an affidavit by motion to dismiss filed contemporaneously with its initial responsive pleading, the complaint is not subject to renewal after the expiration of the applicable period of limitation unless a court determines that the plaintiff had the requisite affidavit within the time required pursuant to this section and the failure to file the affidavit is the result of a mistake. The filing of a motion to dismiss pursuant to this section shall alter the period for filing an answer to the complaint in accordance with Rule 12(a), South Carolina Rules of Civil Procedure.

Finally, subsection G states section 15–36–100 applies to twenty-two specific professions, including medical doctors.

## C. Analysis

We affirm the circuit court's dismissal of Ranucci's Notice for her failure to comply with the contemporaneous filing requirement of section 15–79–125. "Where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it which are not in the legislature's language." *City of Camden*, 326 S.C. at 561, 486 S.E.2d at 495. The language at issue here is both clear and explicit.

 This appeal turns upon the proper application of two statutes that treat related situations and reference one another. Here, section 15–36–100 establishes the procedure for commencing suits for professional negligence against professionals in twenty-two different areas, including medical doctors. § 15–36–100(B), (G). By contrast, section 15–79–125 deals specifically with prelitigation requirements for medical malpractice actions. § 15–79–125(A).[2] Medical malpractice is a type of professional negligence and, therefore, falls within the domain of both statutes. *See Doe v. Am. Red Cross Blood Servs., S.C. Region*, 297 S.C. 430, 435, 377 S.E.2d 323, 326 (1989) (recognizing physicians and other medical professionals are subject to professional negligence actions). Despite the

2. Both statutes were added to the South Carolina Tort Claims Act by Act. No. 32, 2005 S.C. Acts 133.

apparent confusion generated by their internal cross-references, these statutes do not conflict. Each statute governs a distinct time period during the litigation process, and those time periods are consecutive. Section 15–79–125 controls the portion of the process that commences with the filing of a Notice of Intent to File Suit and ends with prelitigation mediation. If the parties are unable to resolve their dispute through mediation, section 15–36–100 guides them through the preparation of initial pleadings and provides mechanisms for challenging and curing defects in the required affidavit.

Section 15–79–125(A) mandates that, prior to filing suit, a plaintiff "shall contemporaneously file a Notice of Intent to File Suit and an affidavit of an expert witness, subject to the affidavit requirements established in Section 15–36–100." This provision imposes two requirements on the affidavit, that it be filed at the same time as the Notice of Intent to File Suit and that it comply with the affidavit requirements of section 15–36–100.

■ The narrow question in this matter is precisely which requirements of section 15–36–100 constitute the affidavit requirements referenced by section 15–79–125(A). Section 15–36–100 sets forth requirements for the qualification of an expert witness-affiant and for the content of an expert witness's affidavit. It also establishes a contemporaneous-filing requirement and exceptions thereto for affidavits filed pursuant to subsection B, rights to challenge or cure affidavits filed pursuant to subsection B and the procedures for doing so, and a limitation on the effects of section 15–36–100 on any applicable statutes of limitation. Further distilled, section 15–36–100 institutes, on the one hand, substantive requirements for the authorship and content of affidavits by expert witnesses and, on the other, procedural requirements relating to such affidavits when filed with a complaint.

We find section 15–79–125(A) invokes only the provisions of section 15–36–100 governing the preparation and content of the affidavit. In particular, section 15–79–125(A) implicates the scheme for qualifying an expert witness as an affiant and the instruction that the affidavit "must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of

the filing of the affidavit." § 15–36–100(A), (B). The plain language of section 15–36–100, which ties the filing of affidavits under that statute to a complaint or other initial pleading, prevents the remaining provisions from applying to affidavits filed pursuant to section 15–79–125. Provisions concerning affidavits filed pursuant to subsection B or the contemporaneous filing provision of subsection B do not apply to affidavits filed under the authority of section 15–79–125.[3] Similarly, provisions requiring parties to file additional documents contemporaneously with an "initial responsive pleading" are meaningless in the context of section 15–79–125, in which no initial pleading yet exists.[4] Section 15–79–125 is silent as to any procedures for challenging an affidavit filed with a Notice of Intent to File Suit. Rather than signifying adoption of the provisions in section 15–36–100, we find this silence denotes those provisions do not apply to affidavits filed in compliance with section 15–79–125.

Nothing in either statute suggests the legislature intended an affidavit filed pursuant to section 15–79–125 to affect a plaintiff's obligation to file a similar affidavit later "as part of the complaint" pursuant to section 15–36–100.[5] Rather, the legislature clearly intended the two statutes to operate independently of one another and in distinct time frames, with the specific exception that they share the criteria for preparing affidavits of expert witnesses.

This intent is further reflected in the effects of each statute's provisions on the process of resolving medical malpractice claims and on the parties' rights. Section 15–79–125

---

3. *See, e.g.,* § 15–36–100(A)(3), (C)(1) & (2).

4. *See, e.g.,* § 15–36–100(C)(1), (E), (F).

5. Ranucci's contention that section 15–79–125 establishes the affidavit and Notice of Intent to File Suit as alternative initial pleadings to be used in commencing a lawsuit for medical malpractice is unpersuasive. This interpretation would obviate the need for section 15–36–100 to apply directly to medical malpractice actions. She misinterprets the prefatory language in section 15–36–100(B), "[e]xcept as provided in Section 15–79–125," as supporting her proposition. Not only does other language in section 15–36–100 fail to support this assertion, but section 15–79–125 clearly states its scope is limited to prelitigation matters. Furthermore, section 15–79–125(E) sets forth a timetable for filing suit should mediation fail.

enables potential litigants to identify likely causes of action, gather information, and pursue a resolution of their medical malpractice disputes through mediation, while shielding the potential plaintiff from the fear of losing his or her right to file suit. An affidavit filed pursuant to this section serves as notice to potential defendants of the claim and qualifies potential plaintiffs and defendants to engage in prelitigation discovery. Such an affidavit is a threshold requirement a medical malpractice claimant must satisfy in order to seek disclosure of sensitive and often highly technical information. However, it does not appear to carry any additional significance that would necessitate implementing measures to test the authorship or content of the affidavit.

By contrast, section 15–36–100 requires the plaintiff to craft a viable complaint supported by the sworn testimony of a qualified expert witness. Because an affidavit filed pursuant to this section is "part of the complaint," it is a pleading for the purpose of the circuit court's evaluation of motions and the merits of the plaintiff's case. *See, e.g.*, Rule 56(c), SCRCP (permitting entry of summary judgment based in part upon "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any"). Recognizing the importance of such a document, the legislature provided the parties the rights to challenge it and cure any defects in it.

Based upon the above analysis, we affirm the circuit court's dismissal of Ranucci's Notice. At issue here are Ranucci's Notice and Affidavit, her prelitigation filings pursuant to section 15–79–125. The record clearly reflects Ranucci filed her Affidavit forty-five days after she filed her Notice. By filing her Affidavit after her Notice, Ranucci failed to comply with the contemporaneous filing requirement of section 15–79–125. Her argument that the affidavit requirements of section 15–36–100 permitted her to file the Affidavit late without violating section 15–79–125 is unpersuasive. The affidavit requirements invoked by section 15–79–125 govern only authorship and content. They do not permit a potential plaintiff to file her expert witness's affidavit after she files her Notice of Intent to File Suit. Accordingly, the circuit court did not

abuse its discretion in dismissing [6] her Notice.

## CONCLUSION

We find sections 15–36–100 and 15–79–125 operate independently of one another, except that section 15–79–125 relies upon the provisions of section 15–36–100 concerning the preparation and content of an affidavit of a medical expert. Therefore, we find the circuit court did not err in this case when it dismissed the Notice for Ranucci's failure to comply with the contemporaneous affidavit filing requirement of section 15–79–125. Accordingly, the decision of the circuit court is

**AFFIRMED.**

KONDUROS, J., concurs.

FEW, C.J., concurring.

I concur with the majority's interpretation of the statutes at issue in this appeal. However, I believe our interpretation requires the conclusion that the statute of limitations has expired on any civil action Ranucci might have brought for malpractice. Therefore, the issues raised in this appeal are moot, and I would dismiss the appeal.

It is fundamental to our system of justice that a civil action must be commenced within the applicable statute of limitations. S.C.Code Ann. § 15–3–20(A) (2005) ("Civil actions may only be commenced within the periods prescribed in this title after the cause of action has accrued. . . ."); *Moates v. Bobb,* 322 S.C. 172, 176, 470 S.E.2d 402, 404 (Ct.App.1996) ("Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system."). A civil action is commenced by the filing and service of a summons and complaint. § 15–3–20(B); Rule 3(a)(1), SCRCP. The statute of limitations on a medical malpractice action is three years. S.C.Code Ann. § 15–3–545(A) (2005). Ranucci's medical malpractice action accrued no later than June 10, 2006, and no civil action has ever been commenced.

---

6. We conclude the circuit court's action in dismissing the Notice is equivalent to striking it from the court's records.

Ranucci argues, however, that sections 15–36–100 and 15–79–125 of the South Carolina Code operate to toll the statute of limitations under the circumstances of this case. The majority has explained that Ranucci's argument is invalid. To the majority's analysis, I would add that section 15–36–100 does not ever toll the statute of limitations. The forty-five day extension in the section comes into play only after a summons and complaint have been filed and served. § 15–36–100(C)(1) ("In such a case, the plaintiff has forty-five days *after the filing of the complaint* to supplement the pleadings with the affidavit." (emphasis added)). Therefore, it is never necessary under that section to toll the statute. Moreover, section 15–36–100(D) specifically provides "[t]his section does not extend an applicable period of limitation."

Section 15–79–125, on the other hand, does toll the statute of limitations. However, the maximum tolling period is explicitly stated in the section. Section 15–79–125(C) requires that "the parties shall participate in a mediation conference" "no later than one hundred twenty days from the service of the Notice" with the possibility that a circuit judge may extend the deadline sixty days for good cause. Section 15–79–125(E) then requires that an action for malpractice "must be filed: (1) within sixty days after" mediation. Thus, section 15–79–125 tolls the statute of limitations for a maximum of 240 days. Any further tolling must be prescribed by statute. § 15–3–20(A) (providing a civil action must be commenced within the statute of limitations "except when . . . a different limitation is prescribed by statute"). There is no statute, nor any other provision of law, which tolls the statute of limitations beyond 240 days, even if the sufficiency of the Notice is being litigated before the circuit court, or during an appeal.

The law imposes upon a prospective plaintiff the duty of commencing a civil action within the applicable statute of limitations. Section 15–79–125 requires prelitigation mediation and other steps to be taken before a medical malpractice action may be commenced. To accommodate the additional requirements, the section allows the statute of limitations to be tolled for up to 240 days. When a medical malpractice defendant contends the additional steps required by section 15–79–125 have not been met, it may resist participating in the mediation. Anticipating the possibility that a prospective

plaintiff may need a court order to force the mediation, the statute provides that "[t]he circuit court has jurisdiction to enforce the provisions of this section." § 15–79–125(D).

These provisions give a prospective medical malpractice plaintiff the tools to complete the necessary steps to commence a medical malpractice lawsuit within the statute of limitations. There is no provision of law, however, which would allow a prospective plaintiff to commence any civil action five-and-a-half years after the statute of limitations began to run. Even if this court ruled in Ranucci's favor, we could grant no more relief than to declare that the Notice was properly filed, and the circuit court erred in ruling to the contrary. We could never enable a summons and medical malpractice complaint to be filed and served before June 10, 2009.[7] *Sloan v. Friends of the Hunley, Inc.*, 369 S.C. 20, 26, 630 S.E.2d 474, 477 (2006) ("A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy. . . ."). The case is over, and the issues raised in this appeal are moot.

---

**7.** Ranucci appears to have filed even the Notice after the expiration of the statute of limitations. According to that document, Ranucci began experiencing pain in her right breast. After an ultrasound, her gynecologist referred her to Dr. Crain for a biopsy, which was performed on June 7, 2006. According to Ranucci's Notice, "[s]ubsequent to the biopsy, the Plaintiff suffered severe pain with her respirations." This "severe pain with her respirations" appears to have been of a different character and a different intensity from the previous "pain in her breast." Thus, the statute of limitations would have begun to run as soon as she felt the different character of pain, not several days later when the cause of the pain was confirmed to be a collapsed lung. *See Knox v. Greenville Hosp. Sys.*, 362 S.C. 566, 571–72, 608 S.E.2d 459, 462 (Ct.App.2005) (holding the statute on a medical malpractice action began to run upon the experience of pain the patient recognized to be different, not when the cause of the pain was subsequently diagnosed). It therefore appears that the statute of limitations expired even before the Notice was filed on June 8, 2009.