763 S.E.2d 189

**Shannon RANUCCI, Petitioner,**

v.

**Corey K. CRAIN, Respondent.**

**Appellate Case No. 2012–211188.**

**No. 27422.**

Supreme Court of South Carolina.

Heard May 20, 2014.
Decided July 23, 2014.
Rehearing Denied Oct. 3, 2014.

---

Daryl G. Hawkins, of Law Office of Daryl G. Hawkins, L.L.C., of Columbia; John S. Nichols and Blake Alexander Hewitt, both of Bluestein Nichols Thompson & Delgado, L.L.C., of Columbia; Eric Christopher Davis, of Eric C. Davis, P.A., of West Columbia, for Petitioner.

Dennis Gary Lovell, Jr., Lee Cannon Weatherly and Michael Baxter McCall, all of Carlock Copeland & Stair, L.L.P., of Charleston, for Respondent.

Andrew A. Mathias, of Nexsen Pruet, L.L.C., of Greenville, for Amicus Curiae, South Carolina Hospital Association.

BEATTY, Justice.

Shannon Ranucci appealed the circuit court's order dismissing her medical malpractice case for failure to contemporaneously file an expert witness affidavit with her Notice of Intent to File Suit ("NOI") pursuant to section 15–79–125 of the South Carolina Code.[1] Ranucci asserted the circuit court erred in finding the affidavit of her medical expert was not timely filed because section 15–79–125 incorporates section 15–36–100, which includes a "safe harbor" provision that extends the time for filing the affidavit.[2]

---

**1.** Section 15–79–125 provides, in part, as follows:

> Prior to filing or initiating a civil action alleging injury or death as a result of medical malpractice, *the plaintiff shall contemporaneously file a Notice of Intent to File Suit and an affidavit of an expert witness, subject to the affidavit requirements established in Section* 15–36–100, in a county in which venue would be proper for filing or initiating the civil action.... *Filing the Notice of Intent to File Suit tolls all applicable statutes of limitations.*

S.C.Code Ann. § 15–79–125(A) (Supp.2013) (emphasis added).

**2.** Section 15–36–100 provides in relevant part:

> (B) Except as provided in Section 15–79–125, in an action for damages alleging professional negligence against a professional licensed by or registered with the State of South Carolina and listed in subsection (G) or against any licensed health care facility alleged to be liable based upon the action or inaction of a health care professional licensed by the State of South Carolina and listed in subsection (G), the plaintiff must file as part of the complaint an affidavit of an

The Court of Appeals affirmed in *Ranucci v. Crain*, 397 S.C. 168, 723 S.E.2d 242 (Ct.App.2012), holding the pre-litigation filing requirement for a medical malpractice case found in section 15–79–125 incorporates only the parts of section 15–36–100 that relate to the preparation and content of an expert's affidavit. This Court granted Ranucci's petition for a writ of certiorari. We reverse the decision of the Court of Appeals and remand the case to the circuit court as we hold that section 15–79–125(A) incorporates section 15–36–100 in its entirety. Thus, Ranucci could invoke section 15–36–100(C)(1), which extended the time for filing the expert witness affidavit and tolled the applicable statute of limitations.

## I. Factual/Procedural History

On June 7, 2006, Dr. Corey Crain performed a needle core breast biopsy on Ranucci. Following the procedure, Ranucci experienced pain while breathing. On June 10, 2006, an X-ray revealed that Ranucci had suffered a collapsed lung.

On June 8, 2009, Ranucci filed an NOI pursuant to section 15–79–125(A), which alleged her collapsed lung was a result of Dr. Crain's negligent execution of the biopsy. The NOI stated that "time constraints" prevented Ranucci from contemporaneously filing an affidavit of a medical expert. The NOI further stated Ranucci would either file such an affidavit within the next forty-five days pursuant to section 15–36–

---

expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit. (C)(1) *The contemporaneous filing requirement of subsection (B) does not apply to any case in which the period of limitation will expire, or there is a good faith basis to believe it will expire on a claim stated in the complaint, within ten days of the date of filing and, because of the time constraints, the plaintiff alleges that an affidavit of an expert could not be prepared. In such a case, the plaintiff has forty-five days after the filing of the complaint to supplement the pleadings with the affidavit.*

. . . .

(D) This section does not extend an applicable period of limitation, except that, if the affidavit is filed within the period specified in this section, the filing of the affidavit after the expiration of the statute of limitations is considered timely and provides no basis for a statute of limitations defense.

S.C.Code Ann. § 15–36–100(B), (C)(1), (D) (Supp.2013) (emphasis added).

100(C) or her allegations of negligence would be "within the ambit of common knowledge and experience" so that Dr. Crain's conduct could be evaluated without the assistance of special learning.

On July 23, 2009, Ranucci filed an affidavit of Dr. Richard Boortz–Marx, a medical doctor from North Carolina who was board certified in anesthesiology and anesthesiology pain management.

Dr. Crain filed an Answer to the NOI and a motion to dismiss Ranucci's NOI on the ground the forty-five day extension for filing an expert affidavit, found in section 15–36–100(C)(1), does not apply to the filing of an NOI under section 15–79–125(A) because the statute expressly requires the expert affidavit be filed contemporaneously with the NOI. Additionally, Dr. Crain claimed Ranucci's NOI was filed outside of the statute of limitations.

After a hearing, the circuit court granted Dr. Crain's motion to dismiss, finding Ranucci did not comply with the plain language of section 15–79–125(A) because she did not file an expert affidavit contemporaneously with the NOI. However, because the NOI and affidavit did not constitute an "action," the court denied Dr. Crain's motion to dismiss on the alternative ground involving the statute of limitations.

Subsequently, Ranucci filed a motion for reconsideration pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Following a hearing, the circuit court denied the motion, but clarified that "S.C.Code Ann. § 15–79–125 and [§ ] 15–36–100 operate independently of each other, and that § 15–36–100 does not offer a procedural alternative to § 15–79–125." Ranucci appealed to the Court of Appeals.

The Court of Appeals affirmed the circuit court's order. *Ranucci v. Crain*, 397 S.C. 168, 723 S.E.2d 242 (Ct.App.2012). In so ruling, the court analyzed the narrow question of "which requirements of section 15–36–100 constitute the affidavit requirements referenced by section 15–79–125(A)." *Id.* at 176, 723 S.E.2d at 246. After parsing section 15–36–100, the court determined that this statute "institutes, on the one hand, substantive requirements for the authorship and content of affidavits by expert witnesses and, on the other, procedural requirements relating to such affidavits when filed with a

complaint." *Id.* However, based on its reading of the two statutes at issue, the court found that, while section 15–79–125 references and incorporates section 15–76–100, the latter statute is not incorporated in its entirety. *Id.* at 177, 723 S.E.2d at 246. Rather, the court concluded that "section 15–79–125(A) invokes only the provisions of section 15–36–100 governing the preparation and content of the affidavit." *Id.* at 176, 723 S.E.2d at 246. Specifically, the court held that although section 15–79–125(A) references section 15–36–100, it does not incorporate the forty-five day filing extension for the expert affidavit found in section 15–36–100(C)(1). *Id.* at 175, 723 S.E.2d at 246.

Based on the foregoing analysis, the court ultimately affirmed the circuit court's dismissal of Ranucci's NOI for failure to comply with the contemporaneous affidavit filing requirement of section 15–79–125. *Id.* at 175, 723 S.E.2d at 246. The court expressly rejected Ranucci's argument that the affidavit requirements of section 15–36–100 permitted her to file the affidavit late without violating section 15–79–125. *Id.* at 178, 723 S.E.2d at 247. The court explained, "The affidavit requirements invoked by section 15–79–125 govern only authorship and content" and "do not permit a potential plaintiff to file her expert witness's affidavit after she files her Notice of Intent to File Suit." *Id.* We granted Ranucci's petition for a writ of certiorari to review the decision of the Court of Appeals.

## II. Discussion

### A. Arguments

Ranucci concedes the individual subsections of 15–79–125 and 15–36–100 are clear when viewed in isolation. However, she asserts a reviewing court must look beyond the plain language of individual subsections in order to discern the underlying purpose of the statutes and their operational effect. Because the "statutes have a shared purpose and were intended to completely incorporate one another," Ranucci contends the Court of Appeals erred in affirming the dismissal of her pre-litigation NOI.

In support of this contention, Ranucci maintains that sections 15–79–125 and 15–36–100 operate together to establish a

two-step process for the filing of medical malpractice cases. Although section 15–79–125 establishes the pre-litigation process in medical malpractice cases, Ranucci explains that section 15–36–100 "creates an orderly procedure where expert affidavits are injected into the earliest stage of a dispute." Specifically, Ranucci notes that section 15–36–100 contains "the definitions, the enforcement mechanisms, and the penalties for noncompliance" that govern all professional negligence claims, including those involving medical malpractice. Therefore, Ranucci avers section 15–79–125 cannot operate in isolation, but must incorporate all provisions of section 15–36–100, including the "safe harbor" provision of subsection (C)(1) that extends the time for filing the pre-litigation affidavit.

## B. Analysis

### 1. Rules of Statutory Construction

Because the disposition of the instant case is dependent on our interpretation of sections 15–79–125 and 15–36–100, we reference the well-established rules of statutory construction. "The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007). "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Id.* In interpreting a statute, "[w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Id.* at 499, 640 S.E.2d at 459. Further, "the statute must be read as a whole and sections which are a part of the same general statutory law must be construed together and each one given effect." *S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006).

"If the statute is ambiguous ... courts must construe the terms of the statute." *Town of Mt. Pleasant v. Roberts*, 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011) (citation omitted). The statutory language must be construed in light of the intended purpose of the statute. *Id.* This Court will not construe a statute in a way which leads to an absurd result or renders it meaningless. *See Lancaster Cnty. Bar Ass'n v.*

*S.C. Comm'n on Indigent Def.,* 380 S.C. 219, 222, 670 S.E.2d 371, 373 (2008) ("In construing a statute, this Court will reject an interpretation when such an interpretation leads to an absurd result that could not have been intended by the legislature.").

### 2. Application of Statutory Construction Rules

■ Utilizing the above-outlined rules, the analysis begins with an examination of the legislative history of the statutes at issue. In 2005, the General Assembly passed Act No. 32 entitled "CIVIL REMEDIES—INSURANCE—PROFESSIONS AND OCCUPATIONS." Act No. 32, 2005 S.C. Acts 133. In prefacing Act No. 32, the General Assembly included express findings stating that the statutes within the Act constitute one subject and are intended to operate together to achieve a common purpose.

As part of this tort reform legislation, the General Assembly added section 15–36–100 "so as to establish standards for expert witnesses in *professional malpractice actions* " and "chapter 79 to title 15 so as to define key terms, provide for mandatory mediation, and to permit binding arbitration in *medical malpractice actions.*" Act No. 32, 2005 S.C. Acts 133 (emphasis added).

Based on this legislative history, we conclude the General Assembly enacted: (1) section 15–36–100 to establish the general construct regarding expert witnesses for all professional negligence cases; and (2) section 15–79–125 as a supplement to section 15–36–100 to provide for pre-litigation requirements that are unique to medical malpractice cases, including mandatory mediation. Thus, even without delving into the specific text of each statute, it is evident the General Assembly intended for sections 15–36–100 and 15–79–125 to be read *in pari materia. See Joiner ex rel. Rivas v. Rivas,* 342 S.C. 102, 109, 536 S.E.2d 372, 375 (2000) ("It is well settled that statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result.").

A review of the plain language of the statutes bolsters this interpretation as the statutes contain internal cross-references. Pursuant to section 15–79–125 a plaintiff is required,

prior to filing or initiating a civil action alleging injury or death as a result of medical malpractice, to "contemporaneously file a Notice of Intent to File Suit and an affidavit of an expert witness, *subject to the affidavit requirements established in Section 15–36–100,* in a county in which venue would be proper for filing or initiating the civil action." S.C.Code Ann. § 15–79–125(A) (Supp.2013) (emphasis added). Because there are no words of limitation surrounding the reference to section 15–36–100, we find it is incorporated into section 15–79–125 in its entirety.

Additionally, section 15–36–100 is applicable to all medical malpractice actions as it specifically includes and references suits against "medical doctors." *See* S.C.Code Ann. § 15–36–100(G)(7) (Supp.2013) ("This section applies to the following professions: . . . (7) medical doctors . . . ."); *id.* § 15–36–100(B) ("Except as provided in Section 15–79–125, in an action for damages alleging professional negligence against a professional licensed by or registered with the State of South Carolina and listed in subsection (G) or against any licensed health care facility alleged to be liable based upon the action or inaction of a health care professional licensed by the State of South Carolina and listed in subsection (G), the plaintiff must file as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit.").

Thus, although sections 15–79–125 and 15–36–100 are distinct in their operational procedures, it is evident the General Assembly promulgated the statutes to work in concert for the common purpose of tort reform involving all professional negligence claims.

Furthermore, an absurd result is created when one fails to read the statutes *in pari materia.* As previously stated, section 15–79–125 governs the pre-litigation requirements for medical malpractice cases. Specifically, section 15–79–125, requires a plaintiff, prior to filing or initiating a medical malpractice claim, to "contemporaneously file a Notice of Intent to File Suit and an affidavit of an expert witness, subject to the affidavit requirements established in Section

15–36–100." S.C.Code Ann. § 15–79–125(A) (Supp.2013). Filing of the NOI tolls all applicable statutes of limitations. *Id.* Thereafter, the parties engage in discovery. *Id.* § 15–79–125(B). Within ninety days and no later than one hundred twenty days from service of the NOI, the parties must participate in a mediation conference. *Id.* § 15–79–125(C). If the mediation is unsuccessful, the plaintiff may initiate the civil action by filing a summons and complaint. *Id.* § 15–79–125(E). However, notably absent from section 15–79–125 are the specifics governing the expert witness affidavit and the remedy for a plaintiff's non-compliance.[3] Instead, these procedures may all be found in section 15–36–100.

Specifically, section 15–36–100 completes the pre-litigation process as it: (1) defines the term "expert witness" and identifies the requisite qualifications;[4] (2) identifies the content of the expert witness affidavit;[5] (3) extends the time for filing an expert witness affidavit when the statute of limitations will soon expire and authorizes a defendant to move for dismissal of a plaintiff's case for failure to file an expert witness affidavit;[6] (5) codifies the common knowledge exception;[7] (6) outlines the procedure for addressing allegedly defective affidavits;[8] and (7) authorizes the trial court to dismiss a plaintiff's case for non-compliance.[9]

Therefore, without incorporating all provisions of section 15–36–100 into section 15–79–125, a plaintiff with a medical

---

3. Although section 15–79–125(D) states that "[t]he circuit court has jurisdiction to enforce the provisions of this section," it provides no specific remedy or procedure.

4. S.C.Code Ann. § 15–36–100(A)(1)–(3) (Supp.2013).

5. *Id.* § 15–36–100(B).

6. *Id.* § 15–36–100(C)(1), (D).

7. *Id.* § 15–36–100(C)(2) ("The contemporaneous filing requirement of subsection (B) is not required to support a pleaded specification of negligence involving subject matter that lies within the ambit of common knowledge and experience, so that no special learning is needed to evaluate the conduct of the defendant.").

8. *Id.* § 15–36–100(E).

9. *Id.* § 15–36–100(F).

malpractice claim is: (1) deprived of the forty-five day "grace period" for filing the affidavit, which is afforded in all other professional negligence cases; and (2) may only invoke the common knowledge exception at the pleading stage and not the pre-litigation stage. Moreover, by only applying selective provisions of section 15–36–100 to the pre-litigation stage of a medical malpractice case, there is no mechanism for a defendant to challenge the sufficiency of a plaintiff's pre-litigation affidavit or a remedy for a plaintiff's non-compliance with the pre-litigation requirements as section 15–79–125 is silent on these issues. Furthermore, a plaintiff would be required to file two expert witness affidavits, i.e., one affidavit with the pre-litigation NOI pursuant to section 15–79–125(A) and another affidavit with the Complaint pursuant to section 15–36–100(B).

Based on the foregoing, we expressly hold that section 15–79–125(A)'s reference to the "affidavit requirements established in Section 15–36–100" constitutes an adoption of all provisions of section 15–36–100.

### 3. Interpretation May Be Reconciled with *Grier* and *Ross*

Our holding is consistent with this Court's recent decisions in *Grier v. AMISUB of South Carolina, Inc.*, 397 S.C. 532, 725 S.E.2d 693 (2012) and *Ross v. Waccamaw Community Hospital*, 404 S.C. 56, 744 S.E.2d 547 (2013). Although there is language in *Grier* and *Ross* stating that sections 15–79–125 and 15–36–100 are unambiguous and must be strictly construed, the Court's analysis in those cases is not as narrow as characterized by Dr. Crain.

In *Grier*, which was decided four months after *Ranucci*, Willie James Fee died while in the care of AMISUB of South Carolina, Inc., d/b/a Piedmont Medical Center ("Piedmont"). *Grier*, 397 S.C. at 534, 725 S.E.2d at 695. Prior to bringing a wrongful death and survival action against Piedmont stemming from medical malpractice allegedly committed while it was treating Fee, the personal representative filed an NOI as required by section 15–79–125(A). *Id.* Her claims contended that Piedmont's failure to monitor and treat Fee for bedsores and sepsis contributed to his death. *Id.* In conjunction with

the NOI, the personal representative contemporaneously filed an affidavit from a nurse with experience treating bedsores and their complications. *Id.*

Piedmont filed a motion to dismiss on the ground the nurse was not qualified to render an opinion as to the cause of death, which meant the affidavit did not contain a competent causation opinion. *Id.* at 535, 725 S.E.2d at 695. The circuit court agreed and granted Piedmont's motion to dismiss. *Id.* Despite being given thirty days to submit a qualifying affidavit, the personal representative failed to do so and the court dismissed her claim. *Id.*

On appeal, this Court considered the question of whether "the pre-suit affidavit a plaintiff statutorily is required to file before bringing a medical malpractice claim must contain an expert opinion on proximate cause." *Id.* at 535, 725 S.E.2d at 695. In answering this question, Justice Hearn, writing for the Court, outlined the applicable provisions of sections 15–79–125(A) and 15–36–100. *Id.* at 536–37, 725 S.E.2d at 695–96. Having found the terms of the statutes to be clear and unambiguous, the Court strictly construed the statutes and concluded "section 15–79–125(A) simply requires the contemporaneous filing of both the notice and the affidavit." *Id.* at 539, 725 S.E.2d at 697.

The Court went on to explain, "While this statute supplies several requirements for the notice, it does not speak at all to what is required for the affidavit beyond stating that it is 'subject to the affidavit requirements established in Section 15–36–100.'" *Id.* (quoting section 15–79–125(A)). The Court noted that section 15–79–125(A) "imposes no content requirements for the expert affidavit and specifically delegates that task to section 15–36–100." *Id.* The Court ultimately held "the expert affidavit required by sections 15–36–100 and 15–79–125 does not need to contain an opinion as to proximate cause." *Id.* at 540, 725 S.E.2d at 698.

Accordingly, the Court reversed the circuit court's order and remanded for further proceedings. *Id.* at 540–41, 725 S.E.2d at 698. The Court emphasized that its decision did not limit a plaintiff's burden to come forward with expert testimony to support the merits of his claims, if necessary, later in the process. *Id.* at 541, 725 S.E.2d at 698. Instead, the Court

noted that it "merely [held] that sections 15–36–100 and 15–79–125 do not require an expert opinion as to causation to be contained within the pre-filing affidavit." *Id.*

Approximately one year after *Grier,* we issued our decision in *Ross.* In *Ross,* the Court addressed the penalties for failure to comply with the pre-litigation mediation requirement of section 15–79–125. *Ross,* 404 S.C. at 56, 744 S.E.2d at 547. Justice Kittredge, writing for the Court, rejected the argument that noncompliance mandated a penalty of dismissal for lack of subject matter jurisdiction. *Id.* at 63, 744 S.E.2d at 551. In so ruling, the Court reasoned that the mediation time period set forth in section 15–79–125 was not intended to place limitations on the circuit court's subject matter jurisdiction. *Id.* Instead, the Court held that "failing to comply with the 120–day statutory time period is a non-jurisdictional procedural defect." *Id.* at 64, 744 S.E.2d at 551. The Court further found "the circuit court retains discretion to permit the mediation process to continue beyond the 120–day time period and may consider principles of estoppel and waiver to excuse noncompliance." *Id.* The Court clarified that the 120–day time period for mediation was not meaningless and could result in dismissal. *Id.*

The Court, however, emphasized that a dismissal is "a function of the court's discretion based on the facts and circumstances, and not as a mandated one-size-fits-all result." *Id.* The Court explained that "the Legislature enacted section 15–79–125 to provide an informal and expedient method of culling prospective medical malpractice cases by fostering the settlement of potentially meritorious claims and discouraging the filing of frivolous claims." *Id.* at 63, 744 S.E.2d at 550. Consequently, the Court expressly declined to "construe section 15–79–125 as a trap for plaintiffs with potentially meritorious claims." *Id.*

As evident from our decisions in *Grier* and *Ross,* this Court has sought to interpret sections 15–79–125 and 15–36–100 in a manner that effectuates the intent of the General Assembly to establish a unique two-step procedure that filters frivolous claims but permits the filing of potentially meritorious claims. Because the pre-litigation filtering process is not meant as an impassable boundary that denies a claimant access to the

courts, we have attempted to "avoid dismissal of cases on technical grounds and to allow adjudication on the merits." *Ross*, 404 S.C. at 65, 744 S.E.2d at 551 (quoting *Schulz v. Nienhuis*, 152 Wis.2d 434, 448 N.W.2d 655, 658 (1989)). Accordingly, we believe a decision to reverse the Court of Appeals in the instant case is consistent with our holdings in *Grier* and *Ross* because the inclusion of all provisions in section 15–36–100 into section 15–79–125 gives credence to the pre-litigation procedure but avoids the creation of "a trap for plaintiffs with potentially meritorious claims." *Id.* at 63, 744 S.E.2d at 550.

### 4. Viability of Ranucci's Case

■ Even if the Court incorporates section 15–36–100 in its entirety into section 15–79–125 and accepts Ranucci's expert witness affidavit as timely, Dr. Crain asserts the circuit court's order should nevertheless be affirmed. In support of this assertion, Dr. Crain raises the following additional sustaining grounds [10]: (1) the NOI was filed outside of the three-year statute of limitations because it was filed on June 8, 2009, which was three years and one day after the biopsy was performed on June 7, 2006; [11] (2) the expert witness affidavit is deficient as Dr. Richard Boortz–Marx, who is certified as an anesthesiologist, is not qualified to render an opinion regarding the surgical procedure at issue; (3) the affidavit, which asserts that Dr. Crain failed to obtain informed consent from

---

10. *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal."); *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("The appellate court may review respondent's additional reasons and, if convinced it is proper and fair to do so, rely on them or any other reason appearing in the record to affirm the lower court's judgment.").

11. *See* S.C.Code Ann. § 15–3–545(A) (2005) ("In any action, other than actions controlled by subsection (B), to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider as defined in Article 5, Chapter 79, Title 38 acting within the scope of his profession must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, not to exceed six years from date of occurrence, or as tolled by this section.").

Ranucci, does not support the allegation regarding the negligent execution of the biopsy; and (4) Ranucci failed to comply with the NOI statute as the parties did not engage in mandatory pre-suit mediation within the requisite 120–day time period.

We reject each of Dr. Crain's additional sustaining grounds. Initially, we disagree with any assertion that the applicable statute of limitations began to run on the day the biopsy was performed. We find Ranucci was put on notice that she had a claim against Dr. Crain on June 10, 2006 when an X-ray revealed that she had suffered a collapsed lung. *See Dunbar v. Carlson,* 341 S.C. 261, 266, 533 S.E.2d 913, 915–16 (Ct.App. 2000) ("The three-year statute of limitations begins to run when the facts and circumstances of the injury would put a person of common knowledge and experience on notice that some right of hers has been invaded or that some claim against a party might exist."). Thus, having found the NOI and expert witness affidavit satisfied the pre-litigation requirements of section 15–79–125(A), Ranucci's lawsuit remains viable as the statute of limitations has been tolled during the pendency of this appeal.

■ As to Dr. Crain's assertions regarding defects in the authorship and content of Dr. Boortz–Marx's affidavit, we find this is not an appropriate ground to affirm the circuit court's order because the affidavit is facially sufficient given it is sworn and identifies a potentially meritorious medical malpractice claim. Moreover, there is no factual basis in the record to challenge either the expert's qualifications or the content of the affidavit. *Cf. Poch v. Bayshore Concrete Prods. /S.C., Inc.,* 405 S.C. 359, 378 n. 13, 747 S.E.2d 757, 767 n. 13 (2013) (declining to reject affidavit presented as proof of workers' compensation insurance as there was "no basis for which to reject the affidavit as it is by its very nature a sworn statement intended as documentary evidence in a legal proceeding"). Thus, we conclude that any challenge to the alleged deficiencies would have to be made by Dr. Crain filing the appropriate motion to dismiss in circuit court pursuant to section 15–36–100(E).

■ Finally, we find the failure to conduct mediation is not fatal to Ranucci's case as the circuit court issued its order on

September 23, 2009, which was 107 days after she filed her NOI on June 8, 2009. Had the case proceeded, the parties could have engaged in mediation before the 120–day deadline. Ranucci should not be penalized for failing to conduct mediation after her NOI was dismissed.

## III. Conclusion

As we interpret the statutes at issue in the context of the legislative history, we conclude the General Assembly sought to promote tort reform by creating a more efficient process in resolving all professional negligence cases by enacting section 15–36–100. Because medical malpractice cases are generally the most complex professional negligence cases, the General Assembly created a unique pre-litigation period of discovery and mandatory mediation via section 15–79–125 in order to "provide an informal and expedient method of culling prospective medical malpractice cases by fostering the settlement of potentially meritorious claims and discouraging the filing of frivolous claims." *Ross,* 404 S.C. at 63, 744 S.E.2d at 550. Even though the General Assembly created a distinct two-step procedure for medical malpractice cases, the first step of the procedure cannot operate unless all provisions of section 15–36–100 are utilized. Thus, section 15–36–100 must be incorporated in its entirety into section 15–79–125 as such a reading harmonizes the statutes and effectuates the purpose of the statutes.

Having found that section 15–79–125 incorporates section 15–36–100 in its entirety, we hold that Ranucci should have been permitted to invoke section 15–36–100(C)(1), which extended the time for filing the expert witness affidavit and tolled the applicable statute of limitations under section 15–79–125(A). Accordingly, we reverse the decision of the Court of Appeals and remand the case to the circuit court for the parties to resume the proceedings by conducting mediation as mandated by section 15–79–125.

**REVERSED AND REMANDED.**

TOAL, C.J., KITTREDGE and HEARN, JJ., concur.
PLEICONES, J., dissenting in a separate opinion.

PLEICONES, Justice.

I respectfully dissent. While I do not agree completely with the Court of Appeals, I do agree that S.C.Code Ann. § 15–79–125(A) (Supp.2013) requires a potential medical malpractice plaintiff to file an expert witness affidavit contemporaneously with her Notice of Intent to File Suit (NOI). I first explain my construction of § 15–79–125, the medical malpractice pre-litigation statute and of S.C.Code Ann. § 15–36–100 (Supp. 2013), the professional negligence complaint statute. I then explain why I do not agree with the majority's reading of these two statutes.

## A. Statutory Construction

As the Court of Appeals correctly stated, the medical malpractice pre-litigation statute, § 15–79–125, and the professional negligence complaint statute, § 15–36–100, operate "in distinct time frames" *Ranucci v. Crain*, 397 S.C. 168, 176, 723 S.E.2d 242, 247 (Ct.App.2012). The medical malpractice statute requires the contemporaneous filing of a pre-complaint pre-litigation expert witness affidavit along with the NOI. § 15–79–125(A). The filing and service of these two documents, along with limited discovery and mandatory mediation, are prerequisites to "filing or initiating a civil action [alleging] medical malpractice. . . ." § 15–79–125. The professional negligence complaint statute, § 15–36–100, on the other hand, is concerned with the expert affidavit that must, in most circumstances, accompany a complaint alleging professional negligence. There is no inherent conflict in the independent operation of these two statutes, one of which requires that a specific type of professional negligence claim go through a pre-complaint pre-litigation process.

The medical malpractice pre-litigation statute and the professional negligence complaint statute reference each other and thus we must interpret them in tandem. The medical malpractice pre-litigation statute provides the expert affidavit accompanying the NOI is "subject to the affidavit requirements established in Section 15–36–100," the professional negligence complaint statute. I would hold this reference in § 15–79–125(A) incorporates only the provisions of § 15–36–100(A) which define "expert" for purposes of the professional

negligence complaint affidavit requirement. My conclusion that only subsection (A) of § 15–36–100 is relevant to § 15–79–125's medical malpractice pre-litigation affidavit requirement is confirmed by § 15–36–100(B).[12] Subsection (B), which requires that a professional negligence complaint be accompanied by an expert affidavit, begins "Except as provided in Section 15–79–125 . . . ." In my opinion, this exception of the medical malpractice pre-litigation statute from § 15–36–100(B)'s contemporaneous complaint/affidavit requirement must be read to mean that medical malpractice complaints in cases that have been processed in accordance with § 15–75–125 are not subject to the expert witness affidavit requirements of the professional negligence complaint statute. I would find the legislature exempted these medical malpractice complaints from the expert witness affidavit requirement in § 15–36–100(B) because such an affidavit has already been provided at the NOI stage, and because the parties have already narrowed the issues through the pre-litigation process required by § 15–75–125.

Under my reading of § 15–36–100(B), there is no requirement that medical malpractice complaints be accompanied by an expert affidavit. It follows, then, that the grace period found in § 15–36–100(C)(1) and the common knowledge exception of § 15–36–100(C)(2), which by their own terms apply only to "the contemporaneous [complaint and expert affidavit] filing requirements of § 15–36–100(B)," are irrelevant in a medical malpractice case. I therefore agree with the Court of Appeals that since Ranucci did not file an expert affidavit along with her NOI, her NOI was properly dismissed.

B. The Majority's Reasoning

The majority advances four reasons to support its conclusion that the provisions of § 15–36–100 must be incorporated wholesale into § 15–79–125. As explained below, I do not find any of the reasons support the majority's interpretation of the two statutes. I note at the outset that the majority does not

12. The Court of Appeals would import some but not all of (B) into § 15–79–125. This is where I part ways with that court's decision. Further, my analysis requires a modification of our decision in *Grier v. AMISUB of South Carolina, Inc.*, 397 S.C. 532, 725 S.E.2d 693 (2012) which applied subsection B to the pre-litigation affidavit.

undertake to explain its understanding of the "Except as provided in § 15–79–125" language that begins § 15–36–100(B), language that is critical to my construction of the two statutes.

The majority first asserts that without the wholesale incorporation of the professional negligence complaint statute into the medical malpractice pre-litigation statute, a medical malpractice plaintiff is deprived of the forty-five day grace period found in § 15–36–100(C)(1). The purpose of this grace period is to toll the statute of limitations when a professional negligence plaintiff files her complaint within ten days of the running of the statute in order to allow her time to procure an expert affidavit. The majority fails to acknowledge that in a medical malpractice case the statute is tolled much earlier, that is, when the NOI and expert witness affidavit are filed under the medical malpractice pre-litigation statute which states the contemporaneous filing of these two documents "tolls all applicable statutes of limitations." § 15–79–125(A). Moreover, under § 15–36–100(C)(1), the forty-five day grace period does not commence until "the filing of the complaint," an event which cannot occur in a medical malpractice action until after the NOI and its affidavit have been filed, discovery materials exchanged, and mediation attempted. *See* § 15–79–125(E). I do not agree that the lack of a "grace period" in the medical malpractice pre-litigation statute, which contains its own tolling provision, mandates that we implant this separate, more limited tolling provision from the professional negligence complaint statute. Further, under my reading of § 15–36–100(B) the medical malpractice plaintiff is exempt from the requirement that her complaint be accompanied by an expert witness affidavit, and therefore she will never have need of the grace period found in § 15–36–100(C)(1).

The majority next expresses concern that unless we hold that § 15–36–100(C)(2) is incorporated into § 15–79–125, a medical malpractice plaintiff need always produce an expert witness affidavit at the NOI stage, even if her claim otherwise falls within the common knowledge exception. I do not understand why the requirement that an expert affidavit accompany every medical malpractice NOI, even where the subject matter is within a layperson's common knowledge, leads to the conclusion that the pre-litigation statute must be read to

include the same exception as found in the complaint affidavit statute. I am not aware of any rule that prohibits the legislature from imposing an expert affidavit requirement as a threshold matter in a medical malpractice situation even if at trial no expert testimony will be required. Moreover, the majority does not explain how § 15–36–100(C)(2), which allows a plaintiff to invoke the common knowledge exception if her "pleaded specification of negligence" meets the criteria, can be applied where there is only a NOI, but no pleading. *See* Rule 7(a), SCRCP (pleadings do not include NOI).

As a third reason to incorporate all of § 15–36–100 into § 15–79–125 the majority asserts that absent such incorporation, there is no mechanism for a defendant to challenge the plaintiff's compliance with the medical malpractice pre-litigation statute. I disagree, and need only point to the present matter before the Court as proof. The provision allowing the present pre-litigation challenge is § 15–79–125(D), which states "The circuit court has jurisdiction to enforce the provisions of this section." Under this subsection of the medical malpractice pre-litigation statute, for example, a court could require a plaintiff to file her standard interrogatories under § 15–79–125(A), or compel either party to comply with a subpoena issued pursuant to § 15–79–125(B). Under the majority's view, however, if a medical malpractice plaintiff failed to file the pre-litigation affidavit required by § 15–79–125(A), filed a non-compliant one, or refused to participate in discovery, then the defendant would be powerless to do anything until the plaintiff filed her complaint, since it is only at that juncture that the sanctions in the professional negligence complaint statute can be invoked. *See* § 15–36–100(C)(1), (E), (F). Requiring a defendant to wait until litigation has commenced to compel the medical malpractice complainant to comply with § 15–79–125 negates the entire **pre-litigation** scheme created by that statute. Moreover, the majority's decision to incorporate the remedial portions of § 15–36–100, all of which address only the plaintiff's obligations when commencing her suit, ignores the fact that under the medical malpractice pre-litigation statute obligations are placed on both the plaintiff and the defendant. If the majority is correct, and the exclusive remedies for failure to comply with the medical malpractice pre-litigation statute are those found

514

in § 15–36–100(C)(1), (E), and (F), then the medical malpractice plaintiff is without any remedy should her defendant fail to meet its obligations under § 15–79–125.

Finally, the majority explains that unless we incorporate all of § 15–36–100 into § 15–79–125, "a plaintiff would be required to file two expert witness affidavits, i.e., one with the pre-litigation NOI pursuant to § 15–79–125(A) and another affidavit with the complaint pursuant to Section 15–36–100(B)." As explained above, I believe the first clause of § 15–36–100(B), "Except as provided in Section 15–79–125," relieves a medical malpractice plaintiff from filing an expert affidavit along with her complaint. Even if the medical malpractice plaintiff were required to file an expert witness affidavit at two separate points in the litigation, I do not agree that such a seemingly unnecessary step requires that we construe the statutes as would the majority.

I respectfully dissent and would affirm the decision of the Court of Appeals as modified.