23698

HITACHI DATA SYSTEMS CORPORATION, Respondent v. Hugh K. LEATHERMAN, Grady L. Patterson, Luther L. Taylor, Jules J. Hesse, Roy E. Moss, Kiffen R. Nanney, Gus J. Roberts, and Carol Baughman, as members of the South Carolina Procurement Review Panel, and the South Carolina Procurement Review Panel, Appellants.

(420 S.E. (2d) 843)

Supreme Court

---

*Faye A. Flowers*, Columbia, *for appellants.*

*David W. Robinson, II*, and *Jacquelyn Bartley* of *Robinson, McFadden & Moore, P.C.*, Columbia, *for respondent.*

Heard March 23, 1992.

Decided Aug. 10, 1992.

FINNEY, Justice:

Appellants, as members of the South Carolina Procurement Review Panel (Panel), appeal the circuit court's ruling that, absent the formal protest of a Chief Procurement Officer's prior decision, the Panel lacked jurisdiction to, *sua sponte*, conduct an administrative review, and its further holding that the Panel was without authority to conduct investigative hearings. We affirm.

In April, 1990, pursuant to S.C. Code Ann. § 11-35-510 (1986), the Division of General Services of the South Carolina Budget and Control Board solicited bids for a mainframe computer for the South Carolina Department of Social Services (DSS). The specifications listed IBM, Amdahl, Hitachi and related equipment as brands to be considered for the proposed lease/purchase acquisition. Respondent Hitachi Data Systems Corporation submitted the only bid. The contract was awarded to the respondent, and the computer was subsequently delivered to DSS and installed. No party objected to or filed a protest in connection with the contract, and no written decision was ever issued by a Chief Procurement Officer.

In July, 1990, the United States Attorney's Office for the State of South Carolina announced that it had been conducting an undercover investigation, code-named Operation Lost Trust, focusing on illegal payoffs by lobbyists to members of the South Carolina legislature, and that several legislators would be indicted during the months following the announcement. Ron Cobb, a key federal witness and informant in the investigation, had been a lobbyist in South Carolina for the respondent and its predecessor, National Advance Systems, since 1985. As a result of the far-reaching effect of Operation

Lost Trust, the Federal Bureau of Investigation and the State Law Enforcement Division announced their intention to investigate the procurement of the Hitachi computer.

In September of 1990, the Panel launched an independent investigation, asking questions of Hitachi, the Division of General Services and DSS regarding procurement of the computer. On September 13, 1990, the Panel notified Hitachi and the state agencies involved that "... the Procurement Review Panel has decided to conduct an administrative hearing to determine whether any violations of the Procurement Code occurred in this procurement ... As a result of this hearing, the Panel may affirm the actions of the state or may order that the contract be rebid ..." The hearing was set for October 8, 1990, and witnesses were subpoenaed.

Upon receiving notice of the hearing, the respondent instituted this action pursuant to S.C. Ann. § 15-53-10, *et seq.*, (1976), and Rule 57, SCRCP, seeking 1) a declaration that the Panel had no jurisdiction or authority to conduct the proposed hearing; 2) to have the subpoena directed to respondent's employee quashed; and 3) to have the Panel temporarily and permanently enjoined from holding the scheduled hearing. In its amended complaint, the respondent alleged that the matter was not a "contested case" within the meaning of S.C. Code Ann. § 1-23-310, *et seq.*, (1986), the Administrative Procedures Act, and that the Panel was without statutory authority to conduct a hearing and affirm or order a rebid in the absence of a formal protest by an interested party.

During pendency of the action, the lease/purchase agreement was abandoned and the computer returned. Additionally, the Panel postponed its hearing pending a decision by the circuit court.

Subsequently, the circuit judge held a hearing on the sole remaining issue of jurisdiction and determined that the Panel was without authority to conduct the proposed hearing. The circuit court found that the Panel is an administrative review body, not an investigative one, and that its scope of authority is limited to the appellate review of written determinations and decisions brought to it by way of protest or application as set forth in S.C. Code Ann. § 11-35-10, *et seq.*, (1986), the South Carolina Consolidated Procurement Code.

On appeal, appellants contend Section 11-35-4410(1) empow-

ers the Panel, without a request or formal protest, to initiate review of any "decision, policy or procedure relating to the expenditure of state funds." Appellants allege further that the award of the computer contract to the sole bidder constitutes a "decision" within the meaning of the statute.

In resolving this controversy, we look first to Section 11-35-10, *et seq.*, the Procurement Code. Among the underlying purposes of the Procurement Code relevant to this issue are:

> (a) The consolidation and clarification of the law governing procurement . . .
>
> (c) To require adoption of competitive procurement practices . . .
>
> (e) To ensure fair treatment of parties conducting business with the state's procurement system . . .
>
> (f) To provide increased economy in state procurement activities . . .
>
> (i) To develop an efficient and effective means of delegating roles and responsibilities to the various governmental bodies and to the chief procurement officers . . . [and]
>
> (l) To mandate . . . a structured system of auditing and monitoring to assure adherence to the Procurement Code.

*See* Section 11-35-20.

"Chief Procurement Officer" is defined in the Procurement Code as (a) the management officer for information technology, (b) the state engineer for areas of construction, architectural and engineering construction management, and land surveying services, and (c) the materials management officer for all other procurements.

The Panel is charged with the responsibility of providing administrative reviews of formal protests of decisions arising from the solicitation and award of contracts, the debarment or suspension of parties from consideration for awarding of contracts, decisions concerning the resolution of contracts or breach of contract controversies, "or any other decision, policy or procedure arising from or concerning the expenditure of state funds for the procurement of any supplies, services, or construction" procured under the Procurement Code, which is

applicable to every expenditure of funds by the state acting through a governmental body.

The Procurement Code provides legal and contractual remedies for parties aggrieved as a result of the procurement process. The aggrieved party may protest in writing to the appropriate Chief Procurement Officer, who is vested with authority to seek a resolution of grievances. If a grievance is not resolved by mutual agreement, the Chief Procurement Officer shall issue a decision in writing. In the event any party adversely affected by such decision requests a review, the Panel provides an administrative review.

In this case, there is no "decision arising from the solicitation and award of contracts" for review pursuant to Section 11-35-4410. Nevertheless, appellants argue that the Panel is authorized to conduct an investigative hearing under the language of Section 11-35-4410 which provides for review of "any other decision, policy or procedure arising from or concerning the expenditure of state funds . . ." Appellants assert that no corresponding section of the Procurement Code provides for review of "other decisions, policies or procedures," therefore, the foregoing language forms the basis for investigative hearings without a prior decision by a Chief Procurement Officer. We disagree.

In construing statutes, we seek to effectuate legislative intent. The cardinal rule of statutory construction is that words used therein must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand its operation. *Wright v. Colleton County,* 301 S.C. 282, 391 S.E. (2d) 564 (1990); *Burns v. State Farm Mut. Auto Ins. Co.,* 297 S.C. 520, 377 S.E. (2d) 569 (1989); *Bryant v. City of Charleston,* 295 S.C. 408, 368 S.E. (2d) 899 (1988). The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Multi-Cinema, Ltd. v. S.C. Tax Comm'n,* 292 S.C. 411, 357 S.E. (2d) 6 (1987).

We construe Section 11-35-4410 to authorize only administrative review by the Panel and only when such review is initiated by protest or request for review of a prior decision, policy or procedure under the provisions of the statute. This Court stated unambiguously in *Ex parte Allstate Ins. Co.,* 248 S.C. 550, 151 S.E. (2d) 849 (1966), that the power

of administrative agencies to investigate and elicit information is derived from and limited by the authorizing statute.

The scope of the Panel's statutory authority at the time of the decision was succinctly outlined in *Ex Parte S.C. Div. of Gen. Serv.*, 283 S.C. 555, 325 S.E. (2d) 319 (1984). In that case, this Court held that the Panel was empowered only to determine whether an unsuccessful bidder should have been awarded a contract and make recommendations to the Budget and Control Board for relief to the aggrieved bidder. The statute has been subsequently amended to broaden the Panel's authority to include the affirmation or ordering of the rebid of a contract.

However, the avenue of written protest remains the sole procedure by which a matter is brought before the Panel for consideration. In *Tall Tower v. Procurement Review Panel*, 294 S.C. 225, 363 S.E. (2d) 683 (1987), we held that "[t]he Panel is charged with conducting an administrative review of formal protests of decisions arising from the solicitation and award of contracts pursuant to the Procurement Code."

Accordingly, we affirm the ruling of the circuit court and hold that the scope of the Panel's authority is limited to appellate review of written determinations, decisions, policies and procedures governed by the Procurement Code when such review is initiated by protest or application as provided by the statute.

Affirmed.

HARWELL, C.J., and CHANDLER, TOAL and MOORE, JJ., concur.