**HASS CONSTRUCTION CO. and
Jeffrey T. Hass, Plaintiffs,**

v.

**Michael THOMAS, Defendant.**

No. CIV.A.2:00–1426–18.

United States District Court,
D. South Carolina,
Charleston Division.

July 18, 2001.

Walter H. Bundy, Jr., Charleston, SC, for plaintiffs.

Robert J. King, Florence, SC, L. Hunter Linsbaugh, Columbia, SC, for defendant.

## ORDER

NORTON, District Judge.

This matter is before the court on defendant's Motion for Summary Judgment. The court heard oral arguments on May 9, 2001. At the court's request, the parties filed supplemental briefs. The matter is now ripe for disposition.

## I. Background

Defendant is the State Engineer for the South Carolina Budget and Control Board, Division of General Services, Office of State Engineer. As part of his duties, defendant serves as a chief procurement officer. Plaintiffs are contractors who entered into a construction contract with South Carolina State University ("SCSU").

After plaintiffs began their work, certain disputes arose between plaintiffs and SCSU. As a result, on January 24, 1997, plaintiffs' attorney asked the State Engineer's office to conduct an administrative review.[1] The parties attempted mediation, but when this was unsuccessful defendant conducted the requested formal administrative review and hearing. Defendant concluded that plaintiffs should be indefinitely suspended from participating in the state's construction projects until plaintiffs complied with defendant's written opinion and until they could provide evidence of financial stability. Plaintiffs claim that defendant's decision to indefinitely suspend them violated their constitutional right to due process.[2]

## II. Summary Judgment Standard

A motion for summary judgment must be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). While the moving party bears the burden of demonstrating that there is no genuine issue of material fact, once that burden has been met, the nonmoving party may not rest on the mere allegations contained in the pleadings. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91

---

1. In a seven page letter dated January 24, 1997, plaintiffs' then attorney asked the then State Engineer for the "earliest possible hearing of this matter." (Def.Supp.Memo.Exh. A). On March 5, 1997, plaintiffs' attorney asked defendant to do "[a]nything you can ... to expedite a hearing in this case...." (Def.Supp.Memo.Exh. D). In a letter dated March 18, 1997, plaintiffs' then attorney once again asked for a "hearing." (Def.Supp.Memo.Exh. E). On March 17, 1997, the State Budget and Control Board gave notice of when the requested hearing would take place. (Def.Supp.Memo.Exh. F). The hearing commenced on April 7, 1997, at nine o'clock in the morning. According to the July 28, 2000, Order of the Honorable William P. Keesley, defendant heard eight days of testimony and issued a "very well written order that was 45 pages long and detailed...." (July 28, 2000, Order at 1).

2. Plaintiffs' arguments throughout this proceeding are somewhat at odds. In their Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, plaintiffs argued that they had been debarred "without notice or the opportunity to be heard or even rudimentary due process...." (Memo. at 1). In contrast, during oral arguments, plaintiffs asserted that defendant had conducted a hearing, but without the statutory authority to do so. Plaintiffs' second argument seems to undermine their assertions that they were not given the opportunity to be heard.

L.Ed.2d 265 (1986). Instead, the nonmoving party "must come forward with specific facts showing that evidence exists to support its claims and that there is a genuine issue for trial." *Estate of Kimmell Through Kimmell v. Seven Up Bottling Co. of Elkton, Inc.*, 993 F.2d 410, 412 (4th Cir.1993). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is material only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *See id.* A complete failure of proof concerning an essential element of a party's cause of action necessarily renders all other facts immaterial. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. All evidence must be viewed in the light most favorable to the nonmoving party. *See Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990).

## III. Legal Analysis

Defendant argues that he was acting as a judicial officer when he conducted the eight day hearing between plaintiffs and SCSU and issued his forty-five page written opinion and is therefore covered by absolute judicial or quasi-judicial immunity. Plaintiffs argue that at all times defendant was acting solely as an administrative officer and therefore is not entitled to absolute judicial immunity.

█ Although executive officers are generally covered only by qualified immunity, the Supreme Court has concluded "that there are some officials whose special functions require a full exemption from liability." *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). While judges acting in their judicial capacity have long received absolute immunity, the Court clarified that absolute judicial immunity also extends to other government officials performing judicial-like functions. *See id.* at 508, 511–12, 98 S.Ct. 2894. In *Butz*, the Court found that an adjudication within a federal administrative agency was similar enough to a judicial proceeding for the hearing officer involved to receive absolute immunity. *See id.* at 512–13, 98 S.Ct. 2894. In reaching this decision, the Court noted that the agency adjudication contained many of the safeguards of a judicial proceeding.[3] *See id.* at 513, 98 S.Ct. 2894. Further, the Court found that the hearing examiner or administrative law judge was the functional equivalent of a judge. The official had many of the same powers of a judge and the process was structured so as to allow the official to exercise his independent judgment without any pressure from any other agency official or political party. *See id.* at 514, 98 S.Ct. 2894. The Court concluded that "[i]n light of these safeguards, ... the risk of an unconstitutional act by one presiding at an agency hearing is clearly outweighed by the importance of preserving the independent judgment of these men and women." *Id.* at 514, 98 S.Ct. 2894; *see also Ostrzenski v. Seigel*, 177 F.3d 245, 248–49 (4th Cir.1999) (finding that there are some situations where "the threat of liability for damages hinders, rather than advances, the prospects

**3.** The Court found that (1) the proceedings were adversarial in nature; (2) they were held before a trier of fact insulated from political influence; (3) the parties were able to present their cases by oral or documentary evidence; (4) the transcript of testimony along with the exhibits were the sole basis for the decision; and (5) the parties had a right to know the findings and conclusions on all issues of fact, law, or discretion. *See Butz*, 438 U.S. at 513, 98 S.Ct. 2894. The eight day hearing conducted by defendant and his September 24, 1997, Order complied with each of these factors.

that public officials will perform their duties in the public interest").

Absolute judicial immunity will not apply, however, if the official's actions were "undertaken in the 'clear absence of all jurisdiction.'" *King v. Myers,* 973 F.2d 354, 356 (4th Cir.1992). Further, the government official must have performed a judicial act—a function normally performed by a judge where "the parties dealt with the judge in his or her judicial capacity." *Id.* at 357.

## A. Jurisdiction

Plaintiffs first argue that defendant acted in the absence of all jurisdiction because he had no statutory authority to conduct a hearing. A chief procurement office has the sole authority to resolve contract and breach of contract controversies between contractors or subcontractors and state agencies. *See* S.C.Code Ann. § 11–35–4230(1) (West 2000). If a dispute arises, either party may initiate resolution proceedings before the chief procurement officer "by submitting a request for resolution to the appropriate chief procurement officer in writing setting forth the general nature of the controversy and the relief requested with enough particularity to give notice of the issues to be decided." S.C.Code Ann. § 11–35–4230(2) (West 2000). The chief procurement officer must then attempt to mediate a resolution. *See* S.C.Code Ann. § 11–35–4230(3) (West 2000). If this is not possible, the "chief procurement officer shall promptly conduct an administrative review and shall issue a decision in writing within ten days of completion of the review." S.C.Code Ann. § 11–35–4230(4) (West 2000). The decision of the chief procurement officer is final and conclusive, unless a party adversely affected by the decision appeals for further administrative review by the Procurement Review Board. *See* S.C.Code

Ann. § 11–35–4230(6) (West 2000). Plaintiffs argue that these provisions of the South Carolina Code give defendant the authority to conduct an administrative review but do not give him the authority to conduct a "hearing."

The South Carolina Supreme Court has noted many times that "[t]he cardinal rule of statutory construction is that words used therein must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand its operation." *Hitachi Data Systems Corp. v. Leatherman,* 309 S.C. 174, 420 S.E.2d 843, 846 (1992). Further, "[t]he language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose." *Id.*

■ In this case, South Carolina Code § 11–35–4230 does not define the term "administrative review." However, after reviewing South Carolina case law, it is apparent that the statute does authorize the chief procurement officer to conduct hearings. First, the South Carolina Supreme Court has noted, without disapproval, that chief procurement officers conducted hearings in pursuit of their duty to conduct administrative reviews. *See Cameron & Barkley Co. v. South Carolina Procurement Review Panel,* 317 S.C. 437, 454 S.E.2d 892, 894 (1995) ("Industrial filed a protest and sought a hearing with the Chief Procurement Officer (CPO) pursuant to S.C.Code Ann. § 11–35–4210(1) (1986)."); *William C. Logan & Assoc's v. Leatherman,* 290 S.C. 400, 351 S.E.2d 146, 147 (1986) ("The chief procurement officer, after notice and a hearing, affirmed the award of the contract to Logan."). Further, the South Carolina Supreme Court has also equated conducting an administrative review with conducting a hearing. *See Home Health Serv., Inc. v. South Carolina Tax Comm'n,* 312 S.C. 324, 440 S.E.2d 375, 376 (1994) ("Appellant requested an ad-

ministrative review. After a hearing, the Tax Commissioners concluded that appellant had violated the Bingo Act on each of the two occurrences."); *Kilgore Group, Inc. v. South Carolina Employment Sec. Comm'n*, 313 S.C. 65, 437 S.E.2d 48, 49 (1993) ("Kilgore sought administrative review. At the administrative hearing, ...."). This interpretation is consistent with the definition found in Black's Law Dictionary, which defines "administrative review" as follows: "Generally refers to judicial review of administrative proceedings; may also embrace appellate review within the administrative agency itself." Black's Law Dictionary 46 (6th ed.1990). Looking at the plain and ordinary meaning of the term "administrative review," the power to conduct an administrative review includes the power to hold a hearing.

Moreover, in light of the purpose of the statute, this is the better interpretation. South Carolina Code § 11–35–4230 directs the chief procurement officer to settle contractual disputes arising between contractors and state agencies. This is the "exclusive means of resolving a controversy between the State and a contractor or subcontractor concerning a contract solicited and awarded under the provisions of the South Carolina Consolidated Procurement Code." S.C.Code Ann. § 11–35–4230(1) (West 2000). Further, after conducting an administrative review, the chief procurement officer is directed to write a decision in which he must include all of the reasons for the actions taken. *See* S.C.Code Ann. § 11–35–4230(4) (West 2000).

The South Carolina Supreme Court has noted that "regulatory bodies are possessed only of those powers which are specifically delineated. By necessity, however, a regulatory body possesses not only the powers expressly conferred on it but also those which must be inferred or implied for it to effectively carry out the duties with which it is charged." *City of Columbia v. Board of Health and Envtl. Control*, 292 S.C. 199, 355 S.E.2d 536, 538 (1987). In this case, defendant stated that it was standard practice for a chief procurement officer to hold hearings to resolve contractual disputes. (Def. Supp. Affidavit ¶ 20). Defendant noted that many "contract controversies center in large part on the credibility of the witnesses, which can only be resolved by seeing and hearing witnesses testify." (Def. Supp. Affidavit ¶ 21). Further, defendant noted that in this case plaintiffs had raised twenty-five "separate, but interlocking complex issues, which needed to be addressed and resolved." (Def. Supp. Affidavit ¶ 21). Defendant stated that without conducting a hearing "it would have been exceedingly difficult, if not impossible, for [him] to ascertain why Hass claimed SCSU was in breach (and vice-versa), who caused what construction delays or other problems, what the parties claimed damages were and why they should be granted relief, and what relief was appropriate and proper." (Def. Supp. Affidavit ¶ 21). In many situations, a hearing is simply the most efficient and practical way, and perhaps the only way, for the chief procurement officer to gather the information necessary for him or her to make an informed decision on the contractual dispute, as he or she is required to do under the statute.[4]

4. Apparently at that time of the hearing plaintiffs also believed that a hearing was necessary and within defendant's authority. In their Complaint, plaintiffs stated that "[p]ursuant to the South Carolina Consolidated Procurement Code, [they] petitioned Thomas, as the Chief Procurement Officer for Construction, for a hearing and resolution of the dispute between [Hass] and SCSU." (Amended Complaint ¶ 7). Further, plaintiffs participated in all aspects of the hearing. It was only during oral arguments before this court that

■ Plaintiffs also argued that defendant exceeded his authority when he indefinitely suspended them from contracting with state agencies. However, defendant has clear statutory authority to debar or suspend contractors. South Carolina Code § 11–35–4220 states:

> After reasonable notice to the person or firm involved, and a reasonable opportunity for such person or firm to be heard, the appropriate chief procurement officer shall have the authority to debar a person for cause from consideration for award of contracts, provided that doing so is in the best interest of the State and there is probable cause for debarment.

In his affidavit, defendant stated that all parties were given notice of the hearing. (Def. Supp. Affidavit ¶ 8). Plaintiffs have not presented any evidence to dispute this fact. Further, defendant noted that although suspension or debarment was not directly at issue in the dispute between the parties, evidence emerged during the hearing indicating that plaintiffs did not have the ability to obtain bonding, as was required under South Carolina law. (Def. Affidavit ¶ 11). There is no evidence that plaintiffs did not have ample opportunity during a vigorously contested eight day hearing to contest this and other allegations. There is also no allegation that plaintiffs were unaware of defendant's power to suspend or debar them if he found the situation so serious and compelling so as to merit this action. *See* S.C.Code Ann. § 11–35–4220 (West 2000). Although defendant's decision was ultimately overturned, defendant had the statutory authority to suspend plaintiffs.

**B.  Judicial Act**

■ Finally, plaintiffs argued that defendant was not acting in a judicial capacity when he unilaterally "debarr[ed] the plaintiffs from contract work with the State of South Carolina without notice or the opportunity to be heard or even rudimentary due process...."[5] (Plaintiffs' Memo. in Opp. to S.J. at 1). Plaintiffs asserted that the hearing did not possess the judicial safeguards necessary to render it a judicial act and cover defendant with judicial immunity. However, according to defendant's affidavit, which plaintiffs have not disputed, the hearing did provide judicial safeguards. The parties were given notice of the hearing. (Def. Supp. Affidavit ¶ 8). Prior to the hearing, the parties agreed to formally exchange a list of witnesses and exhibits. (Def. Supp. Affidavit ¶ 10). Further, prior to the hearing, both parties submitted detailed statements of the issues to be decided. (Def. Supp. Affidavit ¶ 11; Def. Supp. Memo. Exh. A, I). At the beginning of the trial, defendant explained the purpose and procedures of the hearing. (Def.Supp.Memo.Exh. K). Defendant stated that "it was understood by all that [defendant] was acting as a neutral hearing officer...." (Def. Supp. Affidavit ¶ 13). During the hearing, all parties presented opening statements, evidence, cross-examination of witnesses, and closing arguments. (Def. Supp. Affidavit ¶ 14). The witnesses were sworn in. (Def. Supp. Affidavit ¶ 15). As to evidentiary issues, the State Engineer's staff counsel was present to assist defendant with legal questions and rulings on evidentiary objections that were made during the course of the hearing. (Def. Supp. Affidavit ¶ 15). Due to the extensive amount of evidence,

plaintiffs first argued that the chief procurement officer did not have the authority to conduct the hearing that plaintiffs themselves requested.

**5.** The record indicates that plaintiffs were indefinitely suspended, not debarred. (Def. Affidavit ¶ 11).

the hearing lasted approximately eight days. (Def. Supp. Affidavit ¶ 16). Defendant stated that his decision was based solely on the testimony and evidence presented during the hearing, and defendant issued a detailed written opinion explaining his conclusions. (Def. Supp. Affidavit ¶ 17). Further, plaintiffs were able to immediately appeal defendant's opinion, and the decision was automatically suspended pending the outcome of the appeal. (Def. Affidavit ¶ 13). Defendant has presented ample, undisputed evidence that the hearing was conducted like a judicial proceedings and that defendant presided over the hearing in a judge-like capacity. As a result, defendant is absolutely immune from claims arising from his actions taken pursuant to the hearing.

## IV. Conclusion

For the reasons set forth above, it is therefore, **ORDERED**, that Defendant's Motion for Summary Judgment be **GRANTED**.

**AND IT IS SO ORDERED**.