# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Jeffrey D. Allen, on behalf of Jane Doe, Appellant,

v.

South Carolina Public Employee Benefit Authority, Employee Insurance Program, Respondents.

Appellate Case No. 2012-212988

––––––––

Appeal from the Administrative Law Court
Shirley C. Robinson, Administrative Law Judge

––––––––

Opinion No. 27504
Heard December 5, 2013 – Filed March 4, 2015

––––––––

**REVERSED**

––––––––

Terry E. Richardson, Jr., of Richardson, Patrick, Westbrook & Brickman, LLC, of Barnwell,  and John A. Massalon, of Wills Massalon & Allen, LLC, of Charleston,  for Appellant.

Theodore D. Willard, Jr., of Montgomery Willard, LLC, and Stephen Van Camp, both of Columbia, for Respondent.

––––––––

**CHIEF JUSTICE TOAL:**  Jeffrey D. Allen (Appellant), on behalf of his daughter, appeals the Administrative Law Court's (ALC) order affirming the Appeals Committee of the South Carolina Budget and Control Board Employee Insurance Program's (EIP Appeals Committee) decision to deny Appellant's insurance claim for his daughter's diabetes educational training session.  We

reverse.

## FACTS/PROCEDURAL BACKGROUND

Appellant, a South Carolina public school district employee, is insured under the Group Health Benefits Plan of the Employees of the State of South Carolina, the public school districts, and participating entities (the State Health Plan).[1] The State Health Plan is offered through EIP.[2]

In November 2007, Appellant's daughter was diagnosed with Type 1 diabetes at the age of two years old.[3] Appellant's daughter's doctor prescribed her an insulin pump to regulate her insulin levels. In August 2008—two weeks prior to attaching the pump to Appellant's daughter's body—her family and two school nurses attended a two-hour training session at the Medical University of South Carolina, during which a diabetic educator taught the caregivers how to operate the insulin pump.

Appellant submitted a $560 claim for the educational training session.[4] Blue Cross Blue Shield of South Carolina (Blue Cross) denied the claim on the grounds

---

[1] The State Health Plan was created by the South Carolina Budget and Control Board (SCBCB) pursuant to section 1-11-710 of the South Carolina Code, which requires the board to "make available to active and retired employees of this State and its public school districts and their eligible dependents group health, dental, life, accidental death and dismemberment, and disability insurance plans and benefits in an equitable manner and of maximum benefit to those covered within the available resources." S.C. Code Ann. § 1-11-710(A)(1) (Supp. 2013).

[2] SCBCB created EIP to administer the State Health Plan. Recently, a newly created agency, the South Carolina Public Employee Benefit Authority (PEBA), assumed administration of EIP pursuant to Act No. 278, 2012 S.C. Acts 2278, 2319.

[3] Appellant's daughter is insured as a dependent under Appellant's State Health Plan policy.

[4] Appellant also submitted a claim for his daughter's insulin pump, which was covered by his policy.

that the "benefit plan does not cover education and/or training for this condition."[5] Appellant appealed the denial through Blue Cross's appeals process. Ultimately, Blue Cross's Appeals Review Committee upheld the denial of benefits on the basis that diabetes educational training is excluded under the State Health Plan, and that section 38-71-46 of the South Carolina Code,[6] which mandates coverage for diabetes educational training in certain health insurance policies, does not apply to the State Health Plan.

Appellant appealed to the EIP Appeals Committee. The EIP Appeals Committee denied Appellant's claim, concluding that Appellant's State Health Plan policy expressly excluded diabetes educational training and that section 38-71-46 did not apply to the State Health Plan.

Appellant appealed to the ALC. In the ALC, Appellant argued that diabetes educational training is covered under the State Health Plan,[7] and in the alternative, the State Health Plan should be reformed to comply with section 38-71-46. Additionally, Appellant requested that the ALC allow the matter to proceed as a class action lawsuit. On August 13, 2012, the ALC issued an order affirming the EIP Appeals Committee's decision that the terms of the State Health Plan do not cover diabetes educational training because the State Health Plan does not qualify as "health insurance coverage" as defined by the South Carolina Code.[8] In light of the ALC's disposition of the case, the ALC declined to address whether it had the authority to permit the case to proceed as a class action.

Appellant appealed the ALC's order to the court of appeals. This Court certified the appeal pursuant to Rule 204(b), SCACR.

## ISSUES

---

[5] Blue Cross is the third-party claims administrator for the State Health Plan. As such, Blue Cross processes and pays claims under the State Health Plan and thus, provides the first level of review for coverage requests.

[6] S.C. Code Ann. § 38-71-46 (2002).

[7] Appellant has now abandoned this argument.

[8] For a health insurance policy to be subject to section 38-71-46, it must provide "health insurance coverage" as defined by section 38-71-840(14) of the South Carolina Code. S.C. Code Ann. §§ 38-71-46, -840(14) (2002).

I.      Whether the ALC erred in concluding that section 38-71-46 does not apply to the State Health Plan?

II.      Whether the ALC erred in failing to address the availability of class action relief?

## STANDARD OF REVIEW

A party who has exhausted all administrative remedies available within an agency and who is aggrieved by an ALC's final decision is entitled to judicial review. S.C. Code Ann. § 1-23-380 (Supp. 2012). In an appeal from a decision by the ALC, the Administrative Procedures Act (APA) provides the appropriate standard of review. *See* S.C. Code Ann. § 1-23-610(B) (Supp. 2012). Under the APA, this Court will reverse an ALC's decision if it is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* A question of statutory interpretation is one of law for this Court to decide. *CFRE, L.L.C. v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) ("Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below." (citing *City of Rock Hill v. Harris*, 391 S.C. 149, 152, 705 S.E.2d 53, 54 (2011))).

## LAW/ANALYSIS

### I. *Applicability of Section 38-71-46 to the State Health Plan*

Appellant argues that the ALC erred in concluding that section 38-71-46 of the South Carolina Code does not apply to the State Health Plan. We agree.

"All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *Kiriakides v. United Artists Commc'ns, Inc.*, 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994) (citing *Bohlen v. Allen*, 228 S.C. 135, 141, 89 S.E.2d 99, 102 (1955)). "'What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will.'" *Hodges v. Rainey*, 341 S.C. 79, 86, 533 S.E.2d 578, 581 (2000) (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed. 1992)). When interpreting a statute, the Court must read the language in a sense which harmonizes with its subject matter and accords with its general purpose. *Eagle Container Co., L.L.C. v. Cnty. of Newberry*, 379 S.C. 564, 570, 666 S.E.2d 892, 896 (2008) (quoting *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992)).

Section 38-71-46 of the South Carolina Code mandates coverage for diabetes education in "*every* health maintenance organization, individual and group health insurance policy, or contract issued or renewed in this State . . . ." S.C. Code Ann. § 38-71-46(A) (emphasis added). For purposes of the mandate, group policy "health insurance coverage" is defined as:

> benefits consisting of medical care provided directly, through insurance or reimbursement, or otherwise *and including* items and services paid for as medical care under any hospital or medical service policy or certificate, hospital or medical service plan contract, or health maintenance organization contract offered by a health insurance issuer . . . .

S.C. Code Ann. § 38-71-840(14) (2002) (emphasis added).[9]

We do not read "health care issuer" as modifying all preceding clauses in subsection (14). Benefits need not be provided by a "health care issuer" to qualify as "health insurance coverage" under section 38-71-840(14). Therefore, based on the plain language of section 38-71-840(14), the ALC erred in finding that the State Health Plan does not provide "health insurance coverage."

---

[9] The statute further provides a list of exceptions. S.C. Code Ann. § 38-71-840(14). None of the exceptions are applicable here.

Instead, the words "and including" in section 38-71-840(14) indicate that the General Assembly intended the statute's definition to be read in two parts, notwithstanding the list of exclusions. The first part of the definition provides that health insurance coverage is defined as benefits consisting of medical care provided: (1) directly through insurance; (2) directly through reimbursement; or (3) provided otherwise. S.C. Code Ann. § 38-71-840(14). After "and included," the definition is expanded to include "items and services paid for as medical care under:" (1) any hospital or medical service policy or certificate; (2) any hospital or medical service plan contract; or (3) any health maintenance contract offered by a health insurance issuer. *Id.* Therefore, the plain language of the statute does not require health insurance coverage to be offered by a "health insurance issuer." To conclude otherwise results in a tortured and illogical reading of the statute. *See Browning v. Hartvigsen*, 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992) ("A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers.").

Section 38-71-46 is entitled "Diabetes Mellitus coverage in health insurance policies; diabetes education." We find that the General Assembly's choice of title and use of the word "every" in section 38-71-46(A) indicates that, indeed, it intended to mandate coverage for "*every* health maintenance organization, individual and group health insurance policy, or contract issued or renewed in this State . . . ." *See* S.C. Code Ann. § 38-71-46(A) (emphasis added). Nowhere in the plain language of section 38-71-46 does the General Assembly exclude—explicitly or implicitly—the State Health Plan from the mandate provided for by this statute.[10]

Moreover, we must read the language of section 38-71-46 in accordance with the statute's general purpose. *See Eagle Container Co.*, 379 S.C. at 570, 666 S.E.2d at 896. South Carolina is cursed by diabetes. According to the South Carolina Department of Health and Environmental Control's most recently published statistics, South Carolina ranks seventh highest in the nation for the percentage of its adult population with diabetes. S.C Dep't of Health & Envtl. Control, *Fact Sheet: Diabetes in South Carolina*, SCDHEC.gov, 1 (Nov. 1, 2013),

---

[10] Although section 38-71-46 indicates that the General Assembly intended for the diabetes mandate to apply to the State Health Plan, we do not conclude that the canon of construction "*expression unius est exclusion alterius*" applies here, or that the State Health Plan is governed by *every* general insurance statute where the General Assembly failed to expressly exclude the State Health Plan.

*available at* http://www.scdhec.gov/administration/library/ML-025328.pdf. Diabetes particularly plagues our state's African-American population, as one in seven African-Americans in South Carolina suffers from diabetes. *Id.* Uncontrolled diabetes can lead to serious complications, and is the seventh leading cause of death in South Carolina. *Id.* However, when diabetes is properly managed, people suffering from the disease often live long, healthy lives. *Id.* at 2. With these statistics in mind, we find that the General Assembly sought to alleviate and prevent diabetes' potentially devastating effects on those South Carolinians suffering from the disease by mandating coverage for the equipment, supplies, medication, and education for the treatment of diabetes.

Thus, given the prevalence of diabetes in South Carolina, coupled with the General Assembly's purpose behind enacting section 38-71-46, we find it inconceivable that the General Assembly intended to exclude South Carolinians insured by the State Health Plan from receiving the benefits of section 38-71-46's mandate. This result is especially unlikely in a case such as this one, where if the policy is interpreted as Respondents argue, it would cover an insulin pump, but not the education on how to use it. Therefore, we believe our reading comports with the general purpose and the plain language of section 38-71-46.

Assuming *arguendo* that section 38-71-840(14) is ambiguous, and that it is necessary to look beyond the plain language of that section, we still do not find that the General Assembly intended to exclude the State Health Plan from section 38-71-46's mandate. According to the ALC, the General Assembly developed a "method" for identifying whether a general insurance statute governs the State Health Plan by choosing whether or not to expressly reference the State Health Plan in each general insurance statute. However, the sections that include an express reference to the State Health Plan were enacted years *after* section 38-71-46, which was enacted in 1999. *See* S.C. Code Ann. §§ 38-71-243, -280, -785 (Supp. 2013).[11] Because these provisions should be viewed in light of when they were enacted, they do not support the ALC's conclusion that the General Assembly did not intend for section 38-71-46's mandate to apply to the State Health Plan.

Likewise, the distinction between Title 1 and Title 38 of the South Carolina Code cannot be relied upon as evidence that the General Assembly intended to exclude the State Health Plan from section 38-71-46's mandate. Title 1, Chapter

---

[11] Section 38-71-280 was enacted in 2007. Act No. 65, 2007 S.C. Acts 284, 284. Sections 38-71-243 and 38-71-785 were both enacted in 2010. Act. No. 143, 2010 S.C. Acts 1162, 1162–63; Act No. 217, 2010 S.C. Acts 1545, 1549–50.

11, of the South Carolina Code defines the State Health Plan and sets forth procedures for its administration. *See* S.C. Code Ann. §§ 1-11-10 to -780 (2002 & Supp. 2013). We find that the General Assembly's decision to place the definitions and procedures in Title 1, instead of in Title 38, does not indicate its intent to exclude the State Health Plan from any insurance mandate included in Title 38 where it is not otherwise mentioned. Therefore, the General Assembly's decision to *define* the State Health Plan in Title 1 provides no indication of legislative intent here.

Finally, we find that the ALC erred in distinguishing self-insured plans for purposes of state insurance mandates and in finding that section 38-71-46 has no application to the State Health Plan because it is self-funded. In support of this proposition, the ALC cites *FMC Corp. v. Holliday*, 498 U.S. 52 (1990). However, in *Holliday*, the United States Supreme Court's inquiry was limited to health plans under the Employee Retirement Income Security Act of 1974 (ERISA), as the Court determined whether ERISA preempted the application of a Pennsylvania statute to a self-funded health care plan. *Id.* at 54. *Holliday* has no application to this case. We do not distinguish self-insurers for purposes of insurance mandates, and as discussed, *supra*, section 38-71-46's mandate applies to the State Health Plan.

Therefore, we hold, as a matter of law, that section 38-71-46 applies to the State Health Plan.

## II. Failure to Address Class Action Relief

The ALC's disposition of this case permitted it to decline to address the issue of whether class action relief is available in this case. *See Futch v. McAllister Towing of Georgetown, Inc.* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding that a court need not address remaining issues when resolution of a prior issue is dispositive). Based on our holding that section 38-71-46 applies to the State Health Plan, the availability of class action relief in this case is an issue that must be addressed, and a remand to the ALC to consider the class action issue would normally be appropriate. However, because this issue can be resolved as a matter of law, we choose to address this issue.

Appellant argues that he is entitled to pursue this case as a class action before the ALC based on Rule 23 of the South Carolina Rules of Civil Procedure (SCRCP). He asserts that the SCRCP is applicable pursuant to Rule 68 of the South Carolina Rules of Procedure for the Administrative Law Court (SCRPALC). We disagree.

While this case was pending before the ALC, Rule 68, SCRPALC, and the notes to that rule, stated:

> **Applicability of South Carolina Rules of Civil Procedure and South Carolina Appellate Court Rules.** The South Carolina Rules of Civil Procedure and the South Carolina Appellate Court Rules may, in the discretion of the presiding administrative law judge, be applied in proceedings before the Court to resolve questions not addressed by these rules.
>
> ### 2009 Revised Notes
>
> The South Carolina Appellate Court Rules may, in the discretion of the presiding administrative law judge, be applied in appellate proceedings before the Court to resolve questions which are not addressed by the Court's appellate rules.

Based on the language of the rule and the accompanying notes, we find that the intent of the ALC in promulgating Rule 68 was to allow the SCRCP to be used to fill in the gaps in the SCRPALC in a contested case before the ALC, and to allow the South Carolina Appellate Court Rules to be used to fill in the gaps in the SCRPALC in an appeal before the ALC.

The present case was an appeal before the ALC. Therefore, the SCRCP, including Rule 23 relating to class actions, is simply inapplicable. Neither the SCRPALC nor the South Carolina Appellate Court Rules provide for a class action to be commenced during an appeal. Therefore, Appellant's request for a class action proceeding before the ALC fails as a matter of law.

Further, since the filing of the appeal with this Court, the ALC has amended Rule 68, SCRPALC, and its notes to read:

> **Applicability of South Carolina Rules of Civil Procedure and South Carolina Appellate Court Rules.** The South Carolina Rules of Civil Procedure and the South Carolina Appellate Court Rules, in contested cases and appeals respectively, may, in the discretion of the presiding administrative law judge, be applied to resolve questions not addressed by these rules.

## 2014 Revised Notes

In contested cases only, the South Carolina Rules of Civil Procedure may, in the discretion of the presiding administrative law judge, be applied to resolve questions not addressed by these Rules. Furthermore, the South Carolina Appellate Court Rules may be applied in like manner in appellate proceedings only.

The revised rule contains even a more direct statement that the SCRCP is inapplicable to appeals before the ALC. Since this amendment relates to procedure, it is fully applicable to any further proceedings before the ALC, including any remand by this Court. *Fairchild v. S.C.Dept. of Transp.*, 398 S.C. 90, 727 S.E.2d 407 (same rules of construction are used to interpret rules as are used to interpret statutes); *State v. Davis*, 309 S.C. 326, 422 S.E.2d 133 (1992), *overruled on other grounds by Brightman v. State*, 336 S.C. 348, 520 S.E.2d 614 (1999) ("When a statute is procedural, it ordinarily will be accorded a retroactive application in the sense that it will be applied to pending actions and proceedings.").[12]

---

[12] Appellant also argues that the EIP Appeals Committee erred in failing to consider his request for class certification. We find that this issue is not preserved for appellate review.

In the document seeking review from the EIP Appeals Committee, Appellant attached and incorporated the allegations of the complaint and other documents filed in a circuit court civil action that he had brought. While these documents were sufficient to put the EIP Appeals Committee on notice that Appellant was seeking class certification in the circuit court action, nothing in these documents was sufficient to place the EIP Appeals Committee on notice that Appellant was seeking to pursue a class action in the proceeding before the Committee. Therefore, any issue regarding the denial of a class action before the EIP Appeals Committee is not preserved for appellate review. *Carson v. S.C. Dept. of Natural Res.*, 371 S.C. 114, 638 S.E.2d 45 (2002) (issue not raised to agency is not preserved for appellate review); *Hubbard v. Rowe*, 192 S.C. 12, 5 S.E.2d 187 (1939) (issues presented for appellate review must have been fairly and properly raised to the lower court).

Further, in the statement of the issues on appeal before the ALC, the sole issue relating to class action stated: "Does the ALC have the authority to certify a class action pursuant [SCRPALC] Rule 68 and SCRCP 23?" This issue did not

CONCLUSION

For the foregoing reasons, we reverse the ALC's decision that section 38-71-46 of the South Carolina Code does not apply to this matter.  The EIP shall promptly determine and pay the benefits that are due for Appellant's daughter under the State Health Plan.

**REVERSED.**

**BEATTY, KITTREDGE and HEARN, JJ., concur.  PLEICONES, J., dissenting in a separate opinion.**

---

raise any allegation of error by the EIP Appeals Committee. Therefore, any allegation of error on the part of the EIP Appeals Committee is not before this Court because it was not properly raised to the ALC.  *Linda Mc Co. Inc. v. Shore*, 390 S.C. 543, 703 S.E.2d 499 (2010);  Rule 37(B)(1), SCRPALC (The brief of a party shall contain "[a] statement of each of the issues presented for review.  The statement shall be concise and direct as to each issue and may be stated in question form.  Broad general statements may be disregarded by the Court.  Ordinarily, no point will be considered that is not set forth in the statement of issues on appeal.").

**JUSTICE PLEICONES:** I respectfully dissent. I disagree with the majority that S.C. Code Ann. § 38-71-46 (2002) applies to the State Health Plan (Plan).

This case is controlled by section 38-71-46(D), which defines what "health insurance polic[ies]" are covered under the diabetes education mandate in section 38-71-46(A).[13] Since the Plan is a group health plan, section 38-71-46(D) requires the use of S.C. Code Ann. § 38-71-840(14) (2002) to determine whether the Plan provides "health insurance coverage," so as to be a "health insurance policy" covered by this diabetes education mandate. In my opinion, it does not.

Section 38-71-840(14) provides:

> "Health insurance coverage" means benefits consisting of medical care provided directly, through insurance or reimbursement, or otherwise and including items and services paid for as medical care under any hospital or medical service policy or certificate, hospital or medical service plan contract, or health maintenance organization contract offered by a health insurance issuer….

Ultimately, whether the Plan qualifies as "health insurance coverage" depends onwhat the phrase "offered by a health insurance issuer" modifies in S.C. Code Ann. § 38-71-840(14) (2002).

I read section 38-71-840(14) differently than does the majority. I read "benefits consisting of medical care provided directly, through insurance or reimbursement, or otherwise and including items and services paid for as medical care" as describing what types of provided benefits qualify as "health insurance coverage." I read the next section "under any hospital or medical service policy or certificate, hospital or medical service plan contract, or health maintenance organization contract offered by a health insurance issuer" as describing what types of insuring agreements offer "health insurance coverage." The term "offered by health insurance issuer" modifies the three types of insurance agreements in the statute, that is, (1) a hospital or medical service policy or certificate, (2) a hospital or

---

[13] While section 38-71-46(A) states that "every health maintenance organization, individual and group health insurance policy" is covered under this mandate, section 38-71-46(D) requires that these policies provide "health insurance coverage" before this mandate is to apply. *See* § 38-71-46(D) ("For purposes of this section: "Health insurance policy" means a health benefit plan, contract, or evidence of coverage providing health insurance coverage as defined in Section 38-71-670(6) and Section 38-71-840(14).").

medical service plan contract, or (3) a health maintenance organization contract. Accordingly, to qualify as "health insurance coverage" the policy, certificate, or contract must be issued by a "health insurance issuer."

 The next step is to determine whether the EIP is a "health insurance issuer." This term is defined in S.C. Code Ann. § 38-71-840(16) (2002):

> "Health insurance issuer" or "issuer" means any entity that provides health insurance coverage in this State. For purposes of this section, "issuer" includes an insurance company, a health maintenance organization, and any other entity providing health insurance coverage which is licensed to engage in the business of insurance in this State and which is subject to state insurance regulation.

I agree with the ALC's conclusion that the EIP is not a "health insurance issuer" because the EIP is not licensed to engage in the business of insurance in this State and not subject to State insurance regulation. *See* S.C. Code Ann. § 1-11-780 (Supp. 2013) ("[t]he State Employee Insurance Program. . . is not under the jurisdiction of the Department of Insurance"). Since the EIP is not a "health insurance issuer" under section 38-71-840(16), the Plan does not provide "health insurance coverage" as defined in section 38-71-840(14). Further, since section 38-71-46 only mandates diabetes education coverage for a "health insurance policy" that provides "health insurance coverage" as defined by section 38-71-840(14), I agree with the ALC that Appellant's claim was properly denied.

Assuming, however, that we must reach the issue of intent, I would reach the same result.[14] The General Assembly has chosen to separate the Plan from general insurance regulation by placing the Plan's governing statutes in Title 1, Chapter 11 of the S.C. Code, rather than in Title 38, Chapter 71 (General Insurance Statutes).[15] Since the General Assembly separated the Plan from the General Insurance Statutes, it has included an express reference to the Plan in the General Insurance Statutes when those statutes are to apply to the Plan. *See* S.C. Code Ann. § 38-71-

---

[14] If the language of a statute gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the statute itself. *Wade v. Berkeley County*, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002).

[15] I reiterate that the General Assembly has specified that EIP, and correspondingly the Plan, is not subject to regulation by the South Carolina Department of Insurance. S.C. Code Ann. § 1-11-780 (Supp. 2013).

785(B) (Supp. 2013) ("This section applies. . .including the state health plan. . ."); S.C. Code Ann. § 38-71-243(B) (Supp. 2013) ("This section applies. . .including the state health plan. . ."). Furthermore, in the context of coverage mandates, the General Assembly has made a direct reference to the Plan when it intends for a mandate found in the General Insurance Statutes to apply to the Plan. *See* S.C. Code Ann. § 38-71-280 (Supp. 2013) (mandating coverage for autism spectrum disorder, "[i]t includes the State Health Plan. . . 'State Health Plan' means the employee and retirees insurance program provided for in Article 5, Chapter 11, Title 1"). The diabetes education mandate, however, contains no reference to the Plan either in the text or the enacting legislation. Accordingly, I find that the General Assembly did not intend for the diabetes education mandate in section 38-71-46 to apply to the Plan.

I also disagree with the majority that the separate treatment of the Plan does not evidence intent for the Plan to be treated differently. Further, I disagree with the majority's contention that because sections 38-71-243, 38-71-280, and 38-71-785 were enacted after section 38-71-46, they cannot support the proposition that when the General Assembly intends for a General Insurance Statute to apply to the Plan, it expressly references the Plan. If a General Insurance Statute applies to the Plan even when the Plan is not mentioned, then there would have been no reason to include the express reference to the Plan in any General Insurance Statute. In construing a statute, we are to assume the General Assembly was aware of past statutes, and we are to give effect to all the words in a statute. *Whitner v. State,* 328 S.C. 1, 6, 492 S.E.2d 777, 779 (1997) (noting the basic presumption that the legislature has knowledge of previous legislation); *Matter of Decker,* 322 S.C. 215, 219, 471 S.E.2d 462, 463 (1995) (citing 82 C.J.S. *Statutes* § 346) (noting that courts are to give effect to all words in a statute). The majority's reading renders the references in the later statutes superfluous and leads to the absurd result that all General Insurance Statutes apply to the Plan unless the Plan is expressly excluded.

Finally, while I am not unsympathetic to the thousands of South Carolinians who suffer from the devastating effects of diabetes, the existence of this health scourge, while tragic, is, in my opinion, of no assistance in our task of statutory construction. Therefore, I disagree with the majority's reliance on the prevalence of a disease in determining whether a coverage mandate found in a General Insurance Statute applies to the Plan.

I would affirm the ALC's holding that section 38-71-46 does not apply to the Plan and uphold the denial of Appellant's claim.