# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Travis Walker, Individually and as Personal Representative of the Estate of Douglas Williford, and Lolita Moore, Appellants,

v.

AnMed Health, Anderson Emergency Associates, P.A., Kevin Morton NP, Jamie Moon RN, and Betty Boyles RN, Defendants,

Of which Anderson Emergency Associates P.A. and Kevin Morton NP are the Respondents.

Appellate Case No. 2021-001036

_____

Appeal From Anderson County
R. Lawton McIntosh, Circuit Court Judge

_____

Opinion No. 6116
Heard March 6, 2024 – Filed July 16, 2025

_____

## REVERSED AND REMANDED

_____

Jordan Christopher Calloway, of McGowan Hood Felder & Phillips, of Rock Hill, Jay Franklin Wright, of McGowan Hood Felder & Phillips, of Greenville, and Whitney Boykin Harrison, of McGowan Hood Felder & Phillips, of Columbia, all for Appellants.

Andrew F. Lindemann, of Lindemann Law Firm, P.A., of Columbia, and Howard W. Paschal, Jr., of Greenville, both for Respondents.

**MCDONALD, J.:** Travis Walker, individually and as personal representative of the Estate of Douglas Williford, and Lolita Moore (Appellants) appeal the circuit court's dismissal of their medical malpractice action. Appellants argue the circuit court erred in (1) finding the affidavit filed with their notice of intent to file suit (NOI) was insufficient to satisfy the statutory prerequisite for their malpractice claims against certain medical providers, (2) finding a physician's supplemental affidavit did not cure the purported defects in their initial expert's affidavit, and (3) dismissing their malpractice action with prejudice. We reverse and remand.

**Facts and Procedural History**

On January 18, 2018, Douglas Williford was involved in a motor vehicle accident and drove himself to the AnMed Health emergency room (ER) in Anderson County. Appellants' complaint notes Williford arrived in the ER at approximately 9:08 p.m. and was discharged at 10:39 p.m., "ten minutes after his brief examination" by nurse practitioner (NP) Kevin Morton. Williford was discharged despite presenting with a "significantly elevated" blood pressure of 244/130, an initial pain level of 9 out of 10, and mid-back pain he described as a "'catch' in his left back near his left shoulder blade." Two weeks later, Williford returned to the AnMed ER at 6:57 a.m., reporting "the pain had gotten worse causing him to be unable to sleep." He was discharged with pain medication at 10:44 a.m. that same day. Williford was later found "unresponsive, not breathing, and pulseless in his car in the emergency room parking lot and was brought back into the ER at 3:45 p.m. Despite aggressive treatment and resuscitative efforts," Williford was pronounced dead at 3:52 p.m. An autopsy revealed he "had suffered a rupture of an aortic aneurysm resulting in an aortic dissection in the ascending aorta." The cause of death was "cardiac tamponade due to a ruptured aortic aneurysm."

On November 5, 2020, Appellants filed the NOI required by section 15-79-125 of the South Carolina Code (Supp. 2024) against AnMed Health; nurse practitioner (NP) Morton; Anderson Emergency Associates, P.A. (AEA); registered nurse Jamie B. Moon; and RN Betty A. Boyles.[1] Attached with Appellants' NOI was the affidavit of Richard Kevin High, a practicing emergency nurse; a proposed complaint setting out the requisite short and plain statement of facts; and answers to standard interrogatories.

---

[1] Morton worked for AEA, a physician's group providing medical staff for the ER.

High has worked in emergency nursing for over thirty years and is board certified in emergency nursing. In his curriculum vitae (CV), High detailed his decades of experience in the field of emergency medicine, including his current position as a Senior Associate in Emergency Medicine at the Vanderbilt University Medical Center. High described this work as follows:

> My position includes administrative, teaching and patient care duties within the Vanderbilt Emergency System.
>
> Vanderbilt is an academic medical system that acts as a tertiary care center, Level 1 Trauma Center and Burn Center for a referral area of roughly 50,000 square miles.
>
> My work entails bedside, clinical and didactic teaching of nurses, clinical staff, residents, fellows and faculty within the Vanderbilt system; mainly within the Emergency Department and Vanderbilt's prehospital provider system. I perform clinical work within the department and on occasion with LifeFlight. I'm also responsible for managing the oversight of the intake and resuscitation of ~8000 trauma patients that present to the department.

High's CV further describes his coordination, moderation, and teaching of a weekly multidisciplinary conference which examines trauma patients presenting to Vanderbilt's Emergency Department. "This conference involves the review of patient resuscitations, team dynamics, injury patterns and treatment rendered. The conference is attended by nurses, prehospital/EMS personnel, medical students, residents and faculty." High began this work in 2007, and he teaches 47 of these weekly conferences per year.

In his affidavit, High expressed his "belief that [his] education, training and experience qualify [him] to render an expert opinion in regard to the expected care that should have been rendered to" Williford in the emergency room. High then gave his opinion, "within a reasonable degree of medical certainty, that agents, and/or employees of AnMed Health and/or private practices staffing the [ER] committed negligent acts or omissions in their care and treatment" of Williford. High identified these alleged breaches of the standard of care to include:

· Inappropriate triage;
· Inadequate workup;

· Failure to do repeat vitals;
· Failure to do repeat pain;
· Failure to obtain/record vitals prior to discharge;
· Failure to obtain further imaging prior to discharge; [and]
· Inappropriate discharge.

High averred that he had reviewed Williford's medical records, including those from AnMed Health, AnMed Family Medicine, and the Anderson County Coroner's Office, and noted these records provided the factual bases for his opinions.  In High's opinion, the identified breaches of the standard of care caused or contributed to Williford's injuries and premature death.

Appellants' proposed complaint includes actions for wrongful death, survival, and loss of consortium.  With respect to Williford's significantly elevated blood pressure of 244/130 upon presentation on the day of the accident, the complaint notes, "A blood pressure in this range is considered a hypertensive crisis" and Williford "met the criteria for hypertensive crisis for both the systolic and diastolic pressures."

In addition, the complaint asserts it is "known to medical providers working in emergency rooms that": (1) "pain in the mid back is a known sign and/or symptom of aortic aneurysm and/or dissection"; (2) "motor vehicle accidents and other forms of trauma are known to cause tears in major blood vessels resulting in aortic aneurysms and/or dissections"; (3) "motor vehicle accidents and other forms of trauma are known risk factors for aortic aneurysms and/or dissection"; (4) "patients with a history of hypertension" and "patients over the age of 50 are at increased risk of aortic aneurysm and/or dissection"; and (5) "hypertensive crisis is often associated with aortic aneurysms and/or dissection."  Appellants contend the treating medical professionals "should have considered aortic aneurysm/dissection [as] potential causes of his symptoms" based on multiple warning signs.

According to Appellants, NP Morton (1) did not include aortic aneurysm/ dissection as a potential diagnosis or consider it to be a possible cause of Williford's symptoms, (2) "did not order any imaging studies" even though "contrast-enhanced computed topography (CT) [and] transesophageal echocardiogram (TEE)" are readily available in the ER setting, (3) improperly diagnosed Williford with muscle strain of his left upper back without considering an aortic aneurysm or "ordering any testing to rule out aortic aneurysm in order to properly protect" his health, and (4) improperly diagnosed and discharged Williford "without rechecking his blood pressure even though he presented with a

blood pressure meeting the criteria for hypertensive crisis."  NP Morton's only submitted orders for Williford upon his presentation to the ER prescribed aspirin and blood pressure medication.

Appellants further alleged Morton and AnMed Health's employees failed to provide Williford with proper medical treatment in accordance with "general common sense and/or the appropriate standard of care."  They claim these lapses were caused by the negligence and carelessness of Morton, Moon, Boyles, and/or other employees of AnMed Health "in failing to possess and exercise that degree of care, competence, and skill ordinarily and customarily possessed and exercised by employees rendering nursing care under similar circumstances."  Appellants asserted Morton and other AnMed employees failed to adhere to "the prevailing standard of emergency medicine" for the reasons listed in High's affidavit, failed "to properly treat a patient in a hypertensive crisis," and failed to "consider aortic aneurysm/dissection as possible causes of [Williford's] complaints."  According to Appellants, had Williford received proper medical care "within the standard of care and/or common sense," the treating medical professionals would, more likely than not, have identified and treated his aortic aneurysm and prevented his death.

Following an unsuccessful pre-suit mediation, Appellants filed their complaint against AnMed Health, AEA, Morton, Moon, and Boyles.[2]  The complaint asserted the same factual bases and causes of action set forth in the proposed complaint filed with the NOI and High's supporting affidavit.

Respondents answered and moved to dismiss, arguing Appellants "failed to file an affidavit from a qualified *medical* expert regarding the *medical providers'* treatment in this case: to wit, [NP] Morton and AEA."  Although Respondents acknowledged High was qualified to render an opinion as to the acts of the nursing co-defendants, they sought dismissal based on Appellants' failure "to provide an affidavit *against the physicians and physician extender,* [*NP*] *Morton*, as required as a mandatory prerequisite to bring [a] medical malpractice action under the S.C. Medical Malpractice Act.  S.C. Code Section 15-79-125 and Section 15-36-100."  Respondents asserted High was not qualified by his education, experience, training, or licensing to provide "non-nursing" opinions because he was not board certified to practice in the same discipline as NP Morton.  They further argued section 40-47-20(36)(h) of the South Carolina Code (Supp. 2024) bars nurses from expressing medical opinions addressing medical acts.  In Respondents' view,

_____

[2] The circuit court approved Appellants' subsequent settlement with AnMed Health, RN Boyles, and RN Moon.

because nurses are prohibited from performing medical acts, it must be illegal for them to testify as to such acts.  And, because NP Morton was performing medical acts as the identified medical provider, he is held to the standard of care of a physician.  Thus, Respondents took the position that High—as an emergency medicine nurse—was prohibited by law from rendering an opinion addressing non-nursing medical acts or the standard of care for a physician extender providing such care.

One week after Respondents moved to dismiss, Appellants filed a supplemental affidavit from emergency physician Michael A. Chansky.  Dr. Chansky noted that in his thirty years practicing emergency medicine, he has both treated patients and taught resident physicians "the proper work up for emergency medicine patients."  After reviewing Williford's medical records, Dr. Chansky opined, to a reasonable degree of medical certainty, that AEA and NP Morton committed the following negligent acts or omissions in treating Williford:

- · Inappropriate triage
- · Failure to address severe high blood pressure and tachycardia
- · Failure to perform repeat vital signs
- · Failure to address and properly work up severe hypertension and tachycardia in the setting of a [motor vehicle accident] and left upper thoracic back pain
- · Failure to obtain appropriate imaging prior to discharge [and]
- · Inappropriate discharge

Dr. Chansky further opined that these breaches of the standard of care caused or contributed to Williford's injuries and death.

Following a hearing, the circuit court granted Respondents' motion to dismiss, with prejudice.  The circuit court found that although Appellants "provided an affidavit regarding nursing acts effective against the nurse codefendants," they failed to file "an affidavit contemporaneously with the NOI[] from a qualified medical expert regarding" the care provided by Respondents, "resulting in an absent affidavit as to" those providers.  The circuit court reasoned that a nurse is not qualified to offer testimony or an opinion as to a nurse practitioner's standard of care or any potential breach of such standard "as to the performance of medical acts" because a nurse does not have the necessary education, training, and licensing.  Although a nurse could "assess a patient [and] implement doctor's or physician extender's orders and treatment plans," a registered nurse could not perform medical acts, including

medically diagnosing, ordering, or interpreting diagnostic tests; providing a medical treatment plan; or issuing prescriptions" as an NP can.  The court further noted High's affidavit never specifically identified Morton and offered no opinion as to the standard of care applicable to an NP, as evidenced by Appellants' answers to certain requests for admission.  The circuit court then found the NOI statute required an expert's allegation be particularized as to a defendant's practice and recognized that different standards of care apply to nurses and nurse practitioners.

The circuit court found High did not meet the requirements of section 15-36-100(A)(2) of the South Carolina Code (Supp. 2024) to testify as to the care Morton provided because High was "not licensed, board certified[,] nor does he work within the same discipline (nursing vs. medicine)."  The court noted the South Carolina Nurse Practice Act differentiates nurses from NPs and each such provider has their "own distinct licensing scheme, educational requirements, and area of specializations."  The circuit court concluded that as a result of additional education, licensing, and training as well as their practice and employment agreements and authorizations granted pursuant to the Nurse Practice Act, NPs perform delegated medical acts, including "the ordering and interpreting of tests," "the forming of a medical diagnosis," "determining a medical treatment plan and prescribing medications," "ordering any work-up on a patient," and "ordering the disposition of a patient."

The circuit court held Morton "acted as the extender of the physician to provide delegated medical acts in the work up of [Williford], just like the doctor" when performing these medical acts.  The circuit court further found the practice of medicine includes submitting "an affidavit to the court that *expresses a medical opinion as to medical acts*."  Thus, the circuit court concluded Appellants failed to file the required contemporaneous affidavit "from a qualified medical expert regarding" the medical care provided by Morton and AEA.

The circuit court then rejected Appellants' timeliness argument because both section 15-36-100(E) of the South Carolina Code (Supp. 2024) (governing the filing of a defective affidavit) and section 15-36-100(F) of the South Carolina Code (Supp. 2024) (governing the failure to file *any* affidavit) provide that a defendant should file a motion to dismiss "contemporaneously with its initial responsive pleading."  The circuit court also rejected Appellants' argument that Dr. Chansky's affidavit qualified as an amendment and thus cured any defect in the use of High's affidavit because the applicable statutes contain no exception for an "absent" affidavit.  Instead, the circuit court noted, Appellants filed a "new and separate" affidavit from a different expert more than five months after filing the

NOI.  Although the circuit court identified section 15-36-100(C) of the South Carolina Code (Supp. 2024) as the only provision allowing a "new or different" affidavit after the filing of the NOI, it held this provision did not apply because the expiration of the statute of limitations was not imminent at the time Appellants filed their NOI.  And, in the circuit court's view, Appellants failed to properly address their inability to obtain a contemporaneous expert affidavit.

The circuit court also found section 15-36-100(E)'s language permitting an amended affidavit inapplicable because Appellants did not merely amend the High affidavit.  The court found Dr. Chansky's affidavit did not cure the affidavit deficiency because (1) "a party cannot amend an absent affidavit," (2) "an amendment to an unqualified unlawful affidavit would be just as unqualified and unlawful," and (3) this was not an "'amendment' to an existing affidavit which is the only subsequent affidavit permitted by statute."  In sum, the circuit court ruled Appellants failed to file the affidavit required by section 15-79-125 or present an adequate legal excuse for this lapse.  The circuit court thus concluded that the "result of filing an unqualified and unlawful opinion is in effect the filing of no affidavit" and "the failure to provide an affidavit" is "mandatory grounds for dismissal."

Finally, the circuit court found Appellants' NOI did not toll the statute of limitations because Appellants failed to file a "legal" affidavit and knowingly submitted "an unqualified and unlawful affidavit."  The circuit court denied Appellants' subsequent Rule 59(e) motion, and Appellants timely appealed.

**Standard of Review**

"Questions of statutory interpretation are questions of law, which [an appellate court is] free to decide without any deference to the court below."  *Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 535, 725 S.E.2d 693, 695 (2012) (quoting *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 887, 881 (2011)).  If a plaintiff fails to file an affidavit or files a defective affidavit with their NOI, and the defendant to whom it pertains raises this deficiency by motion to dismiss, the plaintiff's complaint is subject to dismissal.  *See* § 15-36-100(C)(1) & (E)-(F).  "[S]ection 15-36-100 restricts a plaintiff's common law right to bring a malpractice claim by imposing this requirement.  Consequently, the language in the statute is to be strictly construed, and section 15-36-100 cannot extend any further than what the General Assembly clearly intended."  *Grier*, 397 S.C. at 538, 725 S.E.2d at 697.

**Analysis**

Appellants contend High's affidavit was sufficient for purposes of section 15-36-100 of the South Carolina Code (Supp. 2024) because High has the education, training, and experience required to offer an opinion addressing the breaches of the standard of care referenced in his affidavit. Appellants assert the circuit court should have evaluated whether High was qualified to opine as to Morton's errors in performing the functions of basic emergency care because the acts addressed in their complaint fall within the realm of emergency nursing care—regardless of the nurse practitioner's ability to perform other physician-level medical acts. It is Appellants' position that High's extensive education, training, and experience—including his decades spent teaching nurses, prehospital personnel, medical students, medical residents, and faculty—qualified him for purposes of section 15-36-100(A)(3) to render an opinion as to Morton's emergency room "work up" errors. We agree.

"As part of the Tort Reform Act of 2005 Relating to Medical Malpractice, the Legislature enacted section 15-79-125 of the South Carolina Code, which requires a medical malpractice plaintiff to file and serve a Notice of Intent to File Suit [NOI] before the plaintiff may initiate a civil action." *Ross v. Waccamaw Cmty. Hosp.*, 404 S.C. 56, 59, 744 S.E.2d 547, 548 (2013) (footnote omitted). Section 15-79-125(A) further requires a plaintiff to contemporaneously file "an affidavit of an expert witness, subject to the affidavit requirements established in section 15-36-100 . . . ." Section 15-79-125(C) then mandates that the parties participate in pre-suit mediation within a specified timeframe. "It is clear that the Legislature enacted section 15-79-125 to provide an informal and expedient method of culling prospective medical malpractice cases by fostering the settlement of potentially meritorious claims and discouraging the filing of frivolous claims." *Ross*, 404 S.C. at 63, 744 S.E.2d at 550.

The NOI "must name all adverse parties as defendants, must contain a short and plain statement of the facts showing that the party filing the notice is entitled to relief, must be signed by the plaintiff or by his attorney, and must include any standard interrogatories or similar disclosures required by the South Carolina Rules of Civil Procedure." § 15-79-125(A). Section 15-79-125 "provides no specifics for the expert affidavit"; rather, it "directs the reader to section 15-36-100." *Grier*, 397 S.C. at 537, 725 S.E.2d at 696. Section 15-79-125 "incorporates section 15-36-100 in its entirety." *Ranucci v. Crain*, 409 S.C. 493, 509, 763 S.E.2d 189, 197 (2014).

Section 15-36-100(B) requires:

> Except as provided in Section 15-79-125, in an action for damages alleging professional negligence against a professional licensed by or registered with the State of South Carolina and listed in subsection (G)[3] or against any licensed health care facility alleged to be liable based upon the action or inaction of a health care professional licensed by the State of South Carolina and listed in subsection (G), the plaintiff must file as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit.

Section 15-36-100(A) defines an expert witness as "an expert who is qualified as to the acceptable conduct of the professional whose conduct is at issue" and who meets the criteria listed in subsections 15-36-100(A)(1) and (2), or (3). Notably, section 15-36-100(A)(3) specifically contemplates an expert who "has scientific, technical, or other specialized knowledge which may assist the trier of fact in understanding the evidence and determining a fact or issue in the case, by reason of the individual's study, experience, or both" but is not licensed or board certified "in the area of practice or specialty about which the opinion on the standard of care is offered." *See* § 15-36-100(A). "[A]n affidavit filed pursuant to subsection [15-36-100(B)] by an expert qualified under this subsection [15-36-100(A)(3)] must contain an explanation of the expert's credentials and why the expert is qualified to conduct the review required by subsection (B)." § 15-36-100(A)(3). "The defendant is entitled to challenge the sufficiency of the expert's credentials pursuant to subsection (E)." *Id.* If a plaintiff fails to submit an affidavit or submits a defective affidavit with their NOI and a defendant to whom it pertains files a motion to dismiss, the case is subject to dismissal for failure to state a claim. *See* § 15-36-100(C)(1) & (E). The contemporaneous affidavit provision also includes a "safe harbor" provision extending the time for filing the required affidavit in certain circumstances. *See Ranucci*, 409 S.C. at 509, 763 S.E.2d at 197 (concluding the medical malpractice plaintiff "should have been permitted to

---

[3] Section 15-36-100(G) of the South Carolina Code (Supp. 2024) lists the professionals to whom the statute applies.

invoke section 15-36-100(C)(1), which extended the time for filing the expert witness affidavit and tolled the applicable statute of limitations under section 15-79-125(A)").

Here, the circuit court erred in finding High's affidavit failed to satisfy the requirements of sections 15-79-125 and 15-36-100 on topics within the realm of emergency nursing and emergency room "work up" care. High is board certified in emergency nursing, has practiced emergency nursing for over thirty years, and has taught medical personnel—including medical students, residents, and faculty—"the proper work up for emergency medicine patients" for over fifteen years. Based on this experience, education, and training, High is qualified to render an expert opinion regarding the basic care and work up Williford should have received upon his presentation to the AnMed emergency room.

And, while we agree with the circuit court that High might not be qualified to render an expert opinion as to *all* of the breaches Appellants allege because High is not licensed, board certified, or specifically educated as a nurse practitioner, we find High is qualified to render an opinion as to one or more of the breaches alleged in his affidavit based on his "scientific, technical, or other specialized knowledge" in the emergency medicine context. High's expertise is specifically contemplated by section 15-36-100(A)(3), one or more of the listed actions (and the failure to take them) fall within the purview of emergency nursing care, and High is extensively qualified in emergency nursing. Because High is qualified to render an opinion—at the very least—as to Morton's failure to recheck Williford's blood pressure and pain levels, his affidavit sufficiently alleged "at least one negligent act or omission claimed to exist" as required by the statute. *See* § 15-36-100(B) (requiring a plaintiff to file "as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit").

We agree with the circuit court that High is not a nurse practitioner, nor is he educated as one. But this is not dispositive as to whether High is qualified to render an opinion addressing *any* of the breaches alleged as to the care Morton provided (or failed to provide) to Williford. *See, e.g., Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 251-54, 487 S.E.2d 596, 597-98 (1997) (holding a proposed expert, who testified he was a "certified paramedic and EMT, had intubated over one hundred patients, and instructs and tests physicians on intubation and extubation procedures," should have been qualified as an expert witness in intubation at medical malpractice trial against an anesthesiologist

because his "training and experience qualified him to testify as an expert in the limited area of intubation," "[t]here was no requirement that [plaintiff's] expert witness be an anesthesiologist in order to testify about intubation procedures," and "experience teaching and interacting with persons in the applicable specialty" may be sufficient to support a medical practitioner's qualification as an expert); *see also Eades v. Palmetto Cardiovascular & Thoracic, PA*, 422 S.C. 196, 203, 810 S.E.2d 848, 851-52 (2018) (stating section 15-36-100(A)(3) "contemplates the production of an expert affidavit from a doctor who is not certified in or does not practice in the same area of medicine as the defendant doctor, but otherwise possesses specialized knowledge to assist the trier of fact").

We also agree that High did not specifically allege Morton committed the negligent acts or omissions at issue; however, he stated "within a reasonable degree of medical certainty, that agents, and/or employees of AnMed Health and/or private practices staffing the . . . [ER] committed negligent acts or omissions in their care and treatment of" Williford. Morton falls within this group. High opined the medical providers who treated Williford committed one or more negligent acts or omissions in breaching the standard of care. This is precisely what section 15-36-100(B) requires. *See* § 15-36-100(B) (requiring a plaintiff to file "as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit"); *Grier*, 397 S.C. at 537-38, 725 S.E.2d at 696-97 (interpreting the term "one negligent act or omission" as a reference to breach, not causation).

For these reasons, the circuit court erred in finding High's affidavit insufficient to satisfy the pre-filing requirements of sections 15-79-125 and 15-36-100, in labeling High's affidavit "unqualified and unlawful," and in dismissing this matter.

## Conclusion

We reverse and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**[4]

---

[4] Because our findings here are dispositive, we decline to address Appellants' remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not address remaining issues when resolution of another issue is dispositive).

**THOMAS, J., and VERDIN, A.J., concur.**